[Cite as *Reyna Capital Corp. v. McKinney Romeo Motors, Inc.*, 2011-Ohio-6806.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

REYNA CAPITAL CORPORATION          :

     Plaintiff-Appellee          :          C.A. CASE NO. 24538

v.          :          T.C. NO.    08CV3052

McKINNEY ROMEO MOTORS, INC.          :          (Civil appeal from
                                    Common Pleas Court)

     Defendant-Appellant          :

                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____30th_____ day of _____December_____, 2011.

. . . . . . . . . .

THOMAS B. TALBOT, JR., Atty. Reg. No. 0002615, P. O. Box 384, Dayton, Ohio 45409
       Attorney for Plaintiff-Appellee, Reyna Capital Corporation

THOMAS J. INTILI, Atty. Reg. No. 0036843 and DANIELLE A. GROVES, Atty. Reg. No.
081136, 40 North Main Street, 1500 Kettering Tower, Dayton, Ohio 45423
       Attorneys for Defendant/Third Party Plaintiff-Appellant, McKinney Romeo Motors,
       Inc.

TERENCE L. FAGUE, Atty. Reg. No. 0018687 and SASHA ALEXA M. VANDEGRIFT,
Atty. Reg. No. 0080800, 33 West First Street, Suite 500, Dayton, Ohio 45402
       Attorneys for Third Party Defendants-Appellees, The Reynolds & Reynolds
       Company, Kenneth Fullenkamp, and Mark C. Tabaka

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of McKinney Romeo Motors, Inc. ("McKinney"), filed March 16, 2011. McKinney is a Pennsylvania corporation that owns and operates "I-79 Honda/Mazda," a joint Honda and Mazda automobile dealership west of Pittsburgh, and also a used car business in West Virginia. McKinney appeals from the trial court's March 8, 2011 "Decision, Order and Entry Staying Action Pending Arbitration and Compelling Arbitration."

{¶ 2} On April 1, 2008, Reyna Capital Corporation ("Reyna"), a leasing company and wholly owned subsidiary of The Reynolds and Reynolds Co. ("Reynolds"), filed a Complaint against McKinney, alleging that McKinney owed Reyna money, plus interest, from March 15, 2008, pursuant to a statement of account, a Master Lease Agreement ("MLA"), and an Exhibit/Lease Schedule, which are attached to the Complaint. Reyna then filed an amended complaint, asserting that it is owed $64,537.41, plus interest.

{¶ 3} McKinney filed an answer and a counterclaim, in which it sought declaratory judgment, and it asserted a claim for fraud. McKinney also filed a third-party complaint against Reynolds, Kenneth Fullenkamp and Mark Tabaka, employees of Reynolds (collectively, "Third-Party Defendants"). Reynolds designs and manufactures computer and data management systems, and in 2005, McKinney contracted with Reynolds to purchase an upgrade of McKinney's existing computer system. Reynolds conveyed the upgraded hardware and software to Reyna, who then leased it to McKinney with an option to purchase at the end of the lease. In its third-party complaint, McKinney sought declaratory judgment

and indemnity against Reynolds, it alleged breach of contract and breach of warranty against Reynolds, and it alleged fraud against the Third-Party Defendants.

{¶ 4} On September 3, 2008, the Third-Party Defendants filed a motion to stay proceedings and compel arbitration of McKinney's third-party complaint, or alternatively to dismiss, and on September 12, 2008, they filed a "Corrected Motion," adding the signature of counsel. Attached to the Corrected Motion are an "Authorization Letter," a "Master Agreement," a "Customer Guide," and an "Exhibit/Lease Schedule." According to the Third-Party Defendants, pursuant to the Ohio Arbitration Act, specifically R.C. 2711.02(B), the Federal Arbitration Act, and the written arbitration agreement, they are entitled to a stay of proceedings and an order compelling arbitration of McKinney's claims in its third-party complaint.

{¶ 5} Reyna filed a memorandum in response, asserting that it "cannot argue that the disputes between [McKinney] and Reynolds should not be arbitrated. However, there is no basis to compel Reyna to arbitrate its disputes with [McKinney] * * *." Reyna further asserted that it "does not want to try this case in two different forums."

{¶ 6} McKinney opposed the Third-Party Defendants' motion, arguing that the arbitration provision in the Customer Guide and the forum selection clause in the MLA were in conflict. McKinney further argued that "Rules 1, 14 and 19 of the Ohio Rules of Civil Procedure and Article IV, Section 5(B) of the Ohio Constitution preclude severance of [McKinney's] third-party indemnity claim against [Reynolds] from Reyna's collection claim against [McKinney]. Second, [Reynolds'] arbitration provision is unenforceable, because this case has witnesses too numerous, and factual issues too complex, for the limitations on

discovery set forth in that provision."

{¶ 7} The Third-Party Defendants filed a reply, arguing that the arbitration provision in the agreement is enforceable and that the claims asserted by McKinney are arbitrable. The Third-Party Defendants argued that it is not necessary that McKinney's claims in its counterclaim and in its third-party complaint be decided jointly.

{¶ 8} On November 5, 2009, the trial court issued a decision sustaining in part the motion to stay proceedings and compel arbitration. The court distinguished between a motion to stay proceedings and a motion to compel arbitration. The court noted that a motion to stay, pursuant to R.C. 2711.02[1], does not require the trial court to hold a hearing, while a motion to compel arbitration, pursuant to R.C. 2711.03[2], does require the trial court to hold a hearing. According to the trial court, "[Reynolds] made a motion 'To Stay Proceedings and Compel Arbitration.' The opening line of [Reynolds'] introduction to its Motion reads 'Third-Party Defendants move to compel arbitration of the claims asserted in the Third-Party Complaint, and stay proceedings in this matter.' Similarly, the last line of the introduction of that Motion states that Third-Party Defendant[s] 'seek an Order from this Court staying the litigation and compelling the arbitration of' the parties['] claims.

---

[1]"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration." R.C. 2711.02 (B).

[2]"The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement." R.C. 2711.03(A).

Although Third-Party Defendant (sic) does not specifically mention R.C. 2711.03 in its motion it is clear that it is asking this Court to do more than merely stay the proceedings to give arbitration a chance to occur. [Reynolds] seeks an order mandating that the parties submit to arbitration as contemplated under the written agreement. Such a motion falls under the procedural requirements of R.C. 2711.03. Therefore, the trial court is bound to hold a hearing on the matter." The court ordered a stay of the proceedings, and it determined that the portion of the motion requesting an order to compel arbitration "is not yet ripe for review."

{¶ 9} The court scheduled a hearing for December 18, 2009. According to McKinney, on the date of the hearing, "the trial court called the case, but then opined on the record that the issues presented by [Reynolds'] motion to compel arbitration were purely legal negating the need for an evidentiary proceeding."

{¶ 10} On December 17th, the Third-Party Defendants filed a supplemental memorandum, arguing Reyna's "role in this suit does not negate [McKinney's] obligation to arbitrate," and that Reyna's and McKinney's claims are subject to arbitration based on estoppel. The Third-Party Defendants further argued that if Reyna's complaint is not subject to arbitration, "McKinney's claims must be compelled to binding arbitration, and Reyna's claim must be stayed in the interim." Finally, the Third-Party Defendants argued that the discovery provisions of the arbitration clause are not unduly restrictive.

{¶ 11} McKinney opposed the supplemental brief, arguing that the dispute is governed by federal, and not State law, that the doctrine of equitable estoppel does not apply, that the discovery provision in the arbitration clause renders it unenforceable, and that the

third-party complaint must be litigated.

{¶ 12} In its March 8, 2011 "Decision, Order and Entry Staying Action Pending Arbitration and Compelling Arbitration," the trial court summarized the relationships of the parties and its previous decision, and it noted, the "only matter presently before this Court is the motion to compel arbitration."   The court determined, "Plaintiff Reyna Capital Corporation does not agree to arbitration, but the argument of The Reynolds and Reynolds Company and McKinney Romeo Motors in the extensive briefing is persuasive.   Therefore, the Motion to Compel Arbitration is granted."   The court stayed the causes of action pending between Reyna and McKinney until the arbitration of McKinney's third-party complaint is concluded. The Decision does not indicate that it is a final appealable order.

{¶ 13} Thereafter, McKinney filed a motion for a stay pending appeal, which the trial court granted.

{¶ 14} By way of background, the upgraded system McKinney leased was designed to handle the data management, storage and processing needs of I-79 Honda/Mazda as well as the used car operation in West Virginia.   Specifically, the upgraded system was to separate Honda transactions from Mazda transactions from transactions related to the used car operation.   According to McKinney, the system did not perform as expected, and in the course of Reynolds' efforts to modify the system to perform as warranted, Fullenkamp advised Joseph Romeo, McKinney's president and chief operating officer, that if the modifications failed to correct the system, McKinney could simply return the system and terminate its contract.   On August 1, 2007, McKinney notified Reynolds that it was terminating its contract effective October 1, 2007.   On August 28, 2007, a Reynolds

technician disabled the system. According to McKinney, on that date it was current with its payment obligations to Reynolds and Reyna. Thereafter, however, McKinney stopped making payments under the lease with Reyna.

{¶ 15} The Authorization Letter attached to the motion for stay and to compel arbitration lists McKinney at the top of the page and is signed by Joseph Romeo and "accepted by" Reynolds and Reyna. It provides in part, "The purpose of this 'Authorization Letter' is to agree upon how You and [Reynolds] will conduct business. By signing this Authorization letter, You are agreeing that Items and Services will be provided for Your use pursuant to this Authorization Letter, the Master Agreement, the then-current Customer Guide * * * and the Exhibit applicable to the Items and Services. If you lease Items from [Reyna], the lease is subject to the Master Lease Agreement with Reyna, and the applicable Exhibit will also serve as Your Lease Schedule. Capitalized terms used in this Authorization Letter, the Master Agreement, Customer Guide, Exhibit/Lease Schedule and Master Lease Agreement are defined in the Defined Terms (all these documents are collectively the 'Documents'). * * * The Documents are specifically incorporated by reference into this Authorization Letter and made a part thereof. * * * .

{¶ 16} "* * *

{¶ 17} "For leasing transactions under the Master Lease Agreement, You assign to Reyna Your right to purchase the Leased Products and license the Licensed Matter, and this Authorization Letter and the applicable Lease Schedule shall act as a bill transferring from Reynolds to Reyna the Leased Products and the Licensed Software under the terms of the Documents which are then leased by Reyna to You under the terms and conditions of the

Documents. Upon commencement of your Lease, Your payment obligations for Leased Items will be to Reyna rather than Reynolds. You remain obligated to Reynolds to follow license, use and other restrictions in the Documents. YOU ACKNOWLEDGE THAT YOUR OBLIGATIONS TO REYNA ARE ABSOLUTE, UNCONDITIONAL, AND SEPARATE AND DISTINCT FROM REYNOLDS.

{¶ 18} "* * * (5) the agreements, rights and obligations contained in the Documents are separate and distinct and may be separately transferred by Reynolds and Reyna * * * ."

{¶ 19} The Master Agreement provides in part, "The Authorization letter, this Master Agreement, Defined Terms, the then-current Customer Guide and Exhibit(s) form Reynolds' relationship with you, the Customer." It further provides, "Disputes will be resolved as provided in the Customer guide." It provides, "If there is any conflict or inconsistent term or provision between the Authorization Letter, Customer Guide, this Master Agreement, * * * Defined Terms and any Exhibit, * * * the documents shall be read in the following order of priority: (1) the Authorization Letter; (2) this Master Agreement; (3) the Customer Guide (as it was in effect at the time the Exhibit was entered into); (4) Defined Terms; (5) the Exhibit."

{¶ 20} The Customer Guide provides in relevant part:

{¶ 21} "**Disputes**. Any disputes between us related directly or indirectly to an Order will be settled by binding arbitration (except for disputes involving your failure to pay amounts due to us or violation of any proprietary rights of Other Providers or us) under the American Arbitration Association Rules except as specifically stated herein. It does not matter whether the controversy is based on contract, tort, strict liability or other legal theory.

Other Providers are express beneficiaries of the Documents for purpose of protecting their rights in and to the Licensed Matter. The arbitration will be held in Dayton, Ohio, by one arbitrator who knows about the electronic information services industry and is an attorney. * * * The Federal Arbitration Act, 9 U.S.C. Sections 115, (sic) not state law, will govern the ability to arbitrate any and all claims and all aspects of any arbitration. * * * At the request of you or us, the arbitrator will establish a discovery schedule that will: (i) allow each party to notice the depositions of up to two persons (and the length of any such deposition will not exceed two days); (ii) allow each party to serve up to 20 requests for production of documents or things; and (iii) require each party to notify the other party of the name and address of each person knowing any facts relating to the claims being arbitrated and describing briefly for each person the relevant facts known by that person. Each party will be allowed at least 20 days after receiving those names and addresses to notice the depositions stated in (i) above. The scope of the depositions, requests for production and the extent of the parties' obligations to respond will be governed by the Federal Rules of Civil Procedure. Except as provided above, there will be no discovery in any arbitration that results from any Order."

{¶ 22} Pursuant to the Defined Terms, the "Customer" is the "entity listed on the top of the Authorization Letter; also referred to as 'You,' 'you,' 'Your' or 'your,' (notwithstanding any assignment to Reyna)." "Other Providers" are "anyone other than us that provides Items or Services to you." "We, us, we or us: means Reynolds in the Master Agreement, and Reyna in the MLA." An "Order" is "the Master Agreement and an Exhibit that has been accepted by us." An "Exhibit" is "any Reynolds' exhibit specifying Items

and/or Services to be acquired. The Exhibit becomes part of an Order when it has been signed by us."

**{¶ 23}** The Exhibit/Lease Schedule provides in part, "YOU ACKNOWLEDGE THAT (A) REYNA DID NOT SELECT, MANUFACTURE OR SUPPLY ANY ITEMS, NOR IS REYNA THE AGENT OF THE MANUFACTURER OR SUPPLIER OF ANY ITEMS."

**{¶ 24}** Finally, the MLA provides, in part:

**{¶ 25}** "14. **General**. (a) The Authorization Letter, this MLA, the Defined Terms, the applicable Lease Schedule(s) and any documents incorporated by reference constitute the entire agreement between you and Reyna regarding Items and other subject matter covered by this MLA and supersedes any previous * * * agreements, whether oral or written. No change, modification or waiver of any term or condition hereof shall be valid or binding unless made in writing and signed by an authorized representative of each party. (b) This MLA shall be governed by the laws of the state of Ohio. Any action relating to or arising out of this MLA shall be instituted and litigated in any federal or state court located in Montgomery County, Ohio, and in no other, and shall be commenced within one year after the date the claim or action accrues. The parties hereby irrevocably consent to the jurisdiction of the courts in Montgomery County, Ohio."

**{¶ 26}** We initially note that McKinney filed its brief on July 11, 2011; the Third-Party Defendants filed their brief on August 23, 2011; and McKinney filed a Reply on October 11, 2011. Reyna filed a "Statement of Position" on August 3, 2011, "in lieu of filing an appellee's brief," in which it repeated its "interests" as set forth in its response to

Reynolds' motion to compel arbitration as follows: "The first is to assert its claim against [McKinney] in the most expedient and inexpensive manner possible. The second is to resist vehemently [McKinney's] efforts to link Reyna as an agent of Reynolds. The third is to avoid litigating in two separate forums. Reyna will continue to assert that its contractual relationship with [McKinney] is separate from [McKinney's] contractual relationship with Reynolds and that there is no agency relationship between Reyna and Reynolds. However, Reyna does not want to try this case in two different forums. Should the Court determine that the arbitration clause is enforceable, then Reyna may well opt to be a part of that arbitration and assert its claim in arbitration."

{¶ 27} On August 24, 2011, McKinney filed a motion seeking an order compelling "reformation" of Reyna's "Statement of Position." McKinney asserted that Reyna failed to comply with the requirements of App.R. 16. Reyna filed a memorandum contra, in which it asserted that it is "merely a financing vehicle for McKinney for the purchase of products from Reynolds, [and] believes it does not belong in that fight." Reyna's "Statement of Position" has no bearing on the matter before us, and McKinney's motion is overruled.

{¶ 28} McKinney asserts one assignment of error herein with multiple subparts as follows:

{¶ 29} "THE TRIAL COURT ERRED BY ORDERING ARBITRATION OF APPELLANT'S THIRD-PARTY CLAIMS."

{¶ 30} 1. "Arbitration of the Third-Party Claims is barred by Civ.R. 14(A) and Art. IV, sec. 5(B) of the Ohio Constitution."

{¶ 31} 2. "Because Appellee's Agreement Contains Both an Arbitration Provision

and a Forum Selection Clause, the Resulting Ambiguity Must be Construed Strictly Against Appellee."

{¶ 32} 3. "Appellee has Waived its Right to Compel Arbitration of the Third-Party Claims."

{¶ 33} 4. "Appellee is Estopped from Compelling Arbitration of the Third-Party Claims."

{¶ 34} 5. "The Arbitration Provision in the Customer Guide is Unenforceable."

{¶ 35} McKinney initially directs our attention to R.C. 2711.02(C), which provides: "Except as provided in division (D) of this section, an order under division (B) of this section that grants or denies a stay of a trial of any action pending arbitration, including, but not limited to, an order that is based upon a determination by the court that a party has waived arbitration under the arbitration agreement, is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." Reynolds also asserts that the March 8, 2011 decision is a final appealable order by virtue of R.C. 2711.02(C). We agree. See *Mynes v. Brooks*, 124 Ohio St.3d 13, 2009-Ohio-5946.

{¶ 36} Our review herein involves questions of law and is de novo. *Westminster Financial Cos. v. Briarcliff Capital Corp.* (2004), 156 Ohio App.3d 266, 270.

{¶ 37} It is "well established that Ohio and federal courts encourage arbitration to settle disputes between parties. *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500 * * * . Indeed there is a strong presumption in favor of arbitration." *McCann v. New Century Mortgage*, Cuyahoga App. No. 82202, 2003-Ohio-2752, ¶ 17. "In enacting the

[Federal Arbitration Act, 9 U.S.C.A. § 1 et seq.], Congress withdrew the powers of the states to force parties to utilize the court system to resolve certain claims where the contracting parties have agreed to arbitrate these claims instead. *Southland Corp. v. Keating* (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1. The FAA's basic purpose is to 'ensure judicial enforcement of privately made agreements to arbitrate' on certain federally controlled topics. *Dean Witter Reynolds, Inc. v. Byrd* (1985), 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158. The purpose of the Ohio Arbitration Act is also to ensure judicial enforcement of privately made agreements to arbitrate." *Med. Imaging Network, Inc. v. Med. Resources*, Mahoning App. No. 04 MA 220, 2005-Ohio-2783, ¶ 16. The FAA provides that certain written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon the grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, courts must place arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc.v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038, and enforce them according to their terms. (Citation omitted)." *AT&T Mobility LLC v. Concepcion* (2011), 131 S.Ct. 1740, at syllabus. Section 2 is the "'primary substantive provision of the Act.'" Id., at 1745.

{¶ 38} Similarly, the Ohio Arbitration Act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A).

{¶ 39} McKinney in his assigned error initially directs our attention to Civ.R. 14, which provides that a "defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him

for all or part of the plaintiff's claim against him." According to McKinney, there "is no exception in Rule 14(A) for third-party claims covered, or arguably covered, by an arbitration clause in a contract."

{¶ 40} Reynolds directs our attention to *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.* (2001), 243 F.3d 906, 909-12, where the Fifth Circuit stayed litigation below pending the outcome of arbitration and refused "to create a [Federal] Rule [of Civil Procedure] 14(c) exception [to the Federal Arbitration Act] that would allow third parties unilaterally to nullify an arbitration clause." The court noted, "to carve out a Rule 14(c) exception to the FAA could severely undermine maritime arbitration clauses, inspiring abuse and opportunistic behavior, as third parties are allowed or encouraged to do what the parties to a contract themselves are not: to put aside a mandatory arbitration provision and force litigation." We agree with the rationale of the Fifth Circuit that Civ.R. 14 cannot be used to avoid McKinney's contractual obligation in the arbitration provision.

{¶ 41} McKinney further points to Civ.R 19(A), which provides that a "person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee." McKinney further notes that Civ.R. 1 provides, "These rules shall be construed

and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice."    According to McKinney, Reynolds' joinder in the litigation is compulsory, and the third-party complaint should not be severed to avoid "the piecemeal resolution of civil disputes that Rule 19 prohibits."

{¶ 42} As Reynolds asserts, Civ.R. 19 does not allow McKinney to avoid the parties' arbitration clause.    Like Civ.R. 14, Civ.R. 19 is comparable to its federal counterpart. Courts interpreting the federal rule have refused to deny arbitration to avoid the danger of inconsistent judgments or piecemeal litigation;   "The threat of piecemeal, inconsistent litigation of claims and issues, * * * is insufficiently prejudicial to render a party indispensable under Rule 19 given the oft-stated preference for arbitration under the FAA." *Brown v. Pacific Life Insurance Co.* (5th Cir. 2006), 462 F.3d 384, 394, citing in part *Doctor's Assocs., Inc. v. Distajo* (2d Cir. 1995)(noting that any prejudice from piecemeal litigation is overcome by the "strong bias in favor of arbitration").

{¶ 43} Finally, McKinney argues that, "to the extent that Rules 1, 14 and 19 conflict with federal arbitration statutes, and federal cases favoring arbitration over litigation, Ohio's civil rules trump those statutes and cases," in reliance upon   Article IV, section 5(B) of the Ohio Constitution, which provides in relevant part: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."    The right conferred by the arbitration provision is a substantive right, and as Reynolds asserts, the plain language of Article IV, section 5(B) provides that the procedural rules "shall not abridge, enlarge, or

modify any substantive right."

{¶ 44} We agree with Reynolds that there is nothing in the Civil Rules or the Ohio Constitution that prohibits the trial court from enforcing the arbitration provision between McKinney and Reynolds, and McKinney has cited no authority to the contrary.

{¶ 45} McKinney next asserts, in the second subpart of his assigned error, that the alleged resulting ambiguity between the forum selection clause in the MLA and the arbitration provision in the Customer Guide "must be construed against" Reynolds. In response, Reynolds directs our attention to *Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.* ( 3d Cir. 1987), 819 F.2d 400, 407, abrogated on other grounds, in which the Third Circuit determined that a forum selection clause did not waive arbitration under federal law and held that a forum selection clause cannot void an arbitration clause unless the forum selection clause specifically precludes arbitration. According to the *Patten* Court, "'The Arbitration Act established that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability.' *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). A forum selection clause, on the other hand, does not enjoy such federal favor. In fact, a forum selection clause 'should be unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought.' *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1971). Thus the forum selection clause must be scrutinized carefully, and if doubts arise as to whether this dispute is arbitrable or not, such doubts must

be resolved in favor of arbitrability. (Citation omitted)." Id.

{¶ 46} As here, the parties in *Patten Securities Corp., Inc.* signed separate documents containing a forum selection clause and an arbitration clause. The forum selection clause required the parties to submit any claims to the jurisdiction of any state or federal court in New Jersey, and it was silent as to arbitration. The Third Circuit determined that Diamond Greyhound & Genetics, Inc. "knew it was waiving its right to attack the maintenance of personal jurisdiction over it by the New Jersey courts or to resort to courts elsewhere. It cannot be said that Diamond also knew that it was waiving its right to the contractual remedy of arbitration, since any reference thereto is absent. The clause is therefore at least ambiguous." Id.

{¶ 47} We agree with Reynolds that the forum selection clause applies to claims arising out of the MLA between Reyna and McKinney, and the arbitration clause applies to claims arising out of the Master Agreement between Reynolds and McKinney. Further, as Reynolds asserts, McKinney has provided no authority contradicting the United States Supreme Court's directive that arbitration clauses be enforced over forum selection clauses.

{¶ 48} McKinney next asserts in the third subpart of his assigned error that Reynolds waived its right to arbitration "when its wholly-owned subsidiary and agent, Reyna, filed suit against McKinney."

{¶ 49} "Because of the presumption in favor of arbitration under the Federal Arbitration Act, [courts] will not lightly infer a party's waiver of the right to arbitration. (Citations omitted). However, a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance

on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.' (Citations omitted)." *Hurley v. Deutsche Bank Trust Co. Americas* (6th Cir. 2009), 610 F.3d 334, 338. Similarly, this court has determined, "[t]he general rule is said to be '* * *that either party to a contract of binding arbitration may waive it * * *.' (Citation omitted). And a plaintiff's waiver may be effected by filing suit. When the opposite party, the potential defendant, is confronted with a filed lawsuit, the right to arbitrate can be saved by seeking enforcement of the arbitration clause. This is done under R.C. 2711.02 by application to stay the legal proceedings pending the arbitration. Failure to move for a stay, coupled with responsive pleadings, will constitute a defendant's waiver." *Premier Accociates, Ltd. v. Loper* (Oct. 27, 2000), Champaign App. No. 2000 CA 11.

{¶ 50} The Authorization Letter makes clear that McKinney's obligations to Reyna are separate and distinct from those owed to Reynolds, and the Exhibit/Lease Schedule states that Reyna is not an agent of Reynolds. As Reynolds asserts, Reyna proceeded against McKinney independently of Reynolds, and Reyna and Reynolds separately filed all substantive pleadings and motions and are represented by separate and unaffiliated counsel. Reynolds sought to arbitrate its dispute with McKinney in reliance upon the arbitration agreement between them upon being served with McKinney's third-party complaint. McKinney has provided no evidence of a binding agency relationship between Reyna and Reynolds such that Reyna's independent pursuit of its claims against McKinney effectuated a waiver of Reynolds' contractual right to arbitrate. Further, McKinney does not assert that Reynolds gave Reyna authority to act on Reynolds' behalf but instead relies on Reyna's

subsidiary relationship to Reynolds. See *Zurich Am. Ins. v. Watts Indus.* (7th Cir. 2005), 417 F.3d 682, 688 ("a mere parent-subsidiary relationship does not create the relation of principal and agent or alter ego between the two.'")

{¶ 51} McKinney next asserts that "for the reasons that [Reynolds] has waived its right to arbitrate [McKinney's] third-party claims, it is also estopped from arbitrating those claims."

{¶ 52} Estoppel "'is a bar that precludes a person from denying a fact that has become settled by an act of the person himself.' *Mark-It-Place Foods, Inc. [v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App.3d 65, 2004-Ohio-411]. Cf. Black's Law Dictionary (8 Ed. Rev. 2004) 589 (defining 'estoppel' as, among other things, '[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true')." *Holt Co. Of Ohio v. Ohio Machinery Co.,* Franklin App. No. 06AP-911, 2007-Ohio-5557, ¶ 23.

{¶ 53} As discussed above, it was Reyna, and not Reynolds, who filed suit against McKinney. Reyna and Reynolds have proceeded independently of each other, and McKinney has not provided any authority for the proposition that Reyna's complaint estops Reynolds from proceeding with its contractual right to arbitration.

{¶ 54} Finally, McKinney asserts that the arbitration provision that limits the parties to just two depositions each "prevents the vindication of legal rights and defies fairness."

{¶ 55} McKinney directs our attention to *Howell v. Rivergate Toyota* (6th Cir. 2005), 144 Fed. Appx. 475. Therein, the Sixth Circuit determined that the scope of discovery allowed by the arbitration provision, which included document production, three depositions

of fact witnesses and additional discovery upon a showing of good cause, and limited discovery to matters admissible under the Federal Rules of Evidence, was not "so narrow that it renders the arbitral forum inadequate to vindicate statutory rights." Id., at 480 - 81. See *Gilmer v. Interstate/Johnson Lane Corp.* (1991)*,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (determining that although the more limited discovery in NYSE arbitration "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and exception of arbitration.' (Citation omitted)."); *Walker v. Ryan's Family Steakhouses, Inc.* (6th Cir. 2005), 400 F.3d 370, 387 ("We acknowledge that the opportunity to undertake extensive discovery is not necessarily appropriate in an arbitral forum, the purpose of which is to reduce the costs of dispute resolution. Indeed, when parties enter arbitration agreements at arms-length they typically should expect that the extent of discovery will be more circumscribed than in a judicial setting."); *Pellow v. Daimler Chrysler Servs. N. Am., LLC* (E.D. MI Aug. 31, 2006), Case No. 05-73815 ("Contrary to Plaintiff's argument, arbitration need not provide him with all *procedural* mechanisms of a court of law; that would defeat the purpose of arbitration. The * * * discovery limitations are therefore enforceable.").

{¶ 56} McKinney agreed to the arbitration provision in an arms-length transaction; there is no evidence that it was unaware or did not understand what it signed. The limited discovery is in keeping with the cost-reducing purpose of arbitration. As Reynolds asserts, McKinney's concern regarding the complexity of the matter is addressed by the provision requiring an arbitrator "who knows about the electronic information services industry and is

an attorney."

{¶ 57} For the foregoing reasons, we conclude that the trial court did not err in granting Reynolds' motion to stay and compel arbitration. The judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J and HALL, J., concur.

Copies mailed to:

Thomas B. Talbot, Jr.
Thomas J. Intili
Danielle A. Groves
Terence L. Fague
Sasha Alexa M. VanDeGrift
Hon. Frances E. McGee