[Cite as *Youngstown Professional Firefighters v. Youngstown*, 2024-Ohio-940.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

YOUNGSTOWN PROFESSIONAL FIREFIGHTERS, IAFF LOCAL 312,

Plaintiff-Appellee,

v.

CITY OF YOUNGSTOWN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0082**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CV 02228

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Cheryl L. Waite, Carol Ann Robb, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Adam V. Buente* and *Atty. A. Joseph Fritz*, Youngstown City Law Department, for Defendant-Appellant and

*Atty. Ryan J. Lemmerbrock* and *Atty. Brooks W. Boron,* Muskovitz & Lemmerbrock, LLC, for Plaintiff-Appellee.

Dated: March 13, 2024

**KLATT, J.**

{¶1}   Appellant, City of Youngstown ("City") appeals the judgment entry of the Mahoning County Court of Common Pleas sustaining the complaint to compel arbitration filed on behalf of Appellee, Youngstown Professional Firefighters, IAFF Local 312 ("Union").   The City argues the timeliness of the grievance is a gateway issue to be resolved by the trial court.   The Union counters a determination of the timeliness of the grievance turns on an interpretation of the collective bargaining agreement. For the following reasons, we affirm the judgment entry of the trial court compelling the City to submit the issue of timeliness to arbitration.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The Union is the exclusive bargaining representative for all sworn firefighters employed by the City.   The Union and the City are parties to the Collective Bargaining Agreement ("CBA") effective January 1, 2020 and May 31, 2023.

{¶3}   Article 10 of the CBA includes a four-step process to resolve grievances. Article 10, Section 4 of the CBA addresses the arbitration procedure and confirms all arbitration decisions shall be binding on the City, the Union, and the grievant. The grievance and arbitration procedure is the sole method agreed upon by the parties to settle disputes concerning the interpretation, application, and administration of the terms of the CBA. Article 10, Section 3 of the CBA requires that all "grievances must be initiated within fourteen (14) calendar days following the occurrence or the discovery of the occurrence giving rise to the dispute."

{¶4}   The grievance at issue in this appeal, Grievance 22-007, asserts "the City's refusal to reinstate Battalion Chief positions, violating a [State Employment Relations Board Unfair Labor Practice] decision and other court rulings, has resulted in violations of the CBA, safety concerns and compensation denied to our members since December 2019." (Grievance 22-007, p. 1.)   The grievance further asserts the City has "yet to acknowledge another vacancy in the rank of Battalion Chief created on 6/5/2021 by the retirement of [Battalion Chief] Sil Caggiano." (*Id.*, p. 2.)   Grievance 22-007 continues, "[e]ven Fire Chief Barry Finley himself, acknowledged on 3/23/2022, during a Labor

Management Committee meeting, that the position exists, is vacant, and that he should be filling it daily * * *." (*Id.*, p. 3.) The grievance does not identify the precipitating event from which the fourteen-day deadline for filing a grievance should be calculated, but instead asserts a continuing contractual violation.

{¶5} Based on the foregoing facts, the Union first elected to appeal the City's alleged refusal to reinstate Battalion Chief positions by way of a motion to enforce State Employment Relations Board Order on April 26, 2022. In the motion, the Union expressly stated it was compelled to file the motion with the State Employment Relations Board because the City informed the Union it would not issue back pay to its members for any alleged delayed promotions as demanded by the Union during a meeting with the City in the early part of 2022.

{¶6} The State Employment Relations Board denied the motion by order dated July 21, 2022. The order reads in relevant part:

> The parties agreed that the City had complied with certain portions of the Board's Order, however, the Union believes that two issues remain. According to the Union[,] the City needs to 1) fill a Battalion Chief vacancy that occurred after the issuance of SERB's June 11, 2020[ ] Order and, 2) provide backpay to other bargaining unit members who were financially impacted due to the delayed promotions attributable to the City's previous abolishment of the Fire Battalion position. The City asserts that it is in the process of filling the vacant Battalion Chief position in accordance with the [CBA], and that the Board's Order did not require the City to provide backpay to any employees other than the Fire Captain specifically addressed in the Order.

> After reviewing the parties' filings and considering their respective arguments, the Board DENIES the Complainant and Intervenor's Motion to Enforce.

{¶7} The Union filed Grievance 22-007 on August 4, 2022, challenging the failure of the City to timely promote Union members. On August 8, 2022, the City denied

Grievance 22-007 at Step 2. The City did not address the merits of the grievance, finding instead that the grievance was untimely.

**{¶8}** On August 25, 2022, the Union advanced Grievance 22-007 to Step 3. At Step 3, the Union responded to the City's conclusion regarding timeliness as follows:

> First, the City continues to violate the CBA every third day when 'C' turn occurs. The City closes Battalion 2 for 24 hours every 'C' turn rather than staff it with 'Out of Class,' the way we have always done prior to this instance and have agreed to in Article 44 of the CBA. Additionally, the grievance is also timely because the City continues to violate the CBA every day that the City refuses to compensate bargaining unit members for time that they should have had in rank through back pay and any other benefits lost as a result of the continuing violation. The City committed a[n] [unfair labor practice] and ignored years of subsequent court rulings in the Union's favor, continuing to benefit from its unlawful action. The City's violation is a continuing violation and the grievance has been timely filed with the City.

**{¶9}** On September 8, 2022, the City denied Grievance 22-007 at Step 3, alleging that the Step 2 grievance was untimely filed. The City did not address the Union's response to the timeliness issue.

**{¶10}** On September 12, 2022, following the City's denial at Step 3, the Union notified the City of its intent to process Grievance 22-007 to arbitration. That same day, the City's Deputy Law Director denied the arbitrability of the grievance. The City's Deputy Law Director represented he would respond to the Union concerning selection of an arbitrator within the 10-day period established in Article 10, Section 4 of the CBA.

**{¶11}** By correspondence dated September 16, 2022, the Union objected to the City's Deputy Law Director's response. The Union reiterated the City's violations of Articles 13 and 44 of the CBA are continuing violations that must be resolved through the CBA's grievance and arbitration procedure.

**{¶12}** On September 21, 2022, the City's Deputy Law Director informed the Union that the City refused to proceed to arbitration based on the City's procedural arbitrability defense. On September 22, 2022, the Union stated that any procedural arbitrability

issues must be addressed at the arbitration hearing, in keeping with past practice, and it would proceed with a panel request to the Federal Mediation and Conciliation Service in accordance with Article 10, Section 4 of the CBA. That same day, the Union requested the panel.

{¶13} On November 18, 2022, the parties mutually selected Arbitrator Samuel Stone to serve as arbitrator. Accepting the appointment, the Arbitrator provided dates to the parties to schedule an arbitration hearing.

{¶14} On November 21, 2022, the City's Deputy Law Director represented the City would not participate in an arbitration hearing without a court order. On November 22, 2022, the Union requested the parties submit the City's procedural arbitrability objection to the Arbitrator. On December 1, 2022, the City's Deputy Law Director represented that the City would not agree to submit the issue to the Arbitrator.

{¶15} As a result of the City's refusal to arbitrate, the Union filed the Complaint to Compel Arbitration of the CBA pursuant to R.C. 2711.03 on December 8, 2022. The parties submitted briefs to the trial court.

{¶16} On June 30, 2023, the trial court sustained the Union's complaint to compel arbitration and ordered the City pay the Union's costs, expenses, and attorney fees associated with the complaint to compel arbitration. The trial court held in relevant part:

> The totality of the circumstances in the instant case establishes that the parties have a broad arbitration clause in Article 10 of the parties' CBA. That broad arbitration clause requires all disputes under the CBA to be resolved through the grievance and arbitration procedure. There is no dispute that the subject matter of Grievance 22-007 falls within the parties' arbitration clause. Further, there is no evidence that the subject matter of Grievance 22-007 has been intentionally excluded from the arbitration procedure by the parties. Because the parties have agreed to the broad arbitration clause and the subject matter of the instant grievance is covered by the parties' broad arbitration clause, Grievance 22-007 must be resolved through the agreed-upon grievance and arbitration procedure.

(6/30/23 J.E., p. 5).

Case No. 23 MA 0082

**{¶17}** The trial court analyzed the City's arbitrability objection as follows:

The City's sole arbitrability objection in the instant case is one of procedural arbitrability. The City claims the Union's grievance was untimely filed and thus is not arbitrable. In following with the well-established caselaw, the City's procedural arbitrability argument is within the jurisdiction of the arbitrator and not this Court. Any analysis and determination of timeliness or alleged continuing contractual violations is so potentially intertwined with the factual merits of the dispute that only the arbitrator has jurisdiction to issue a decision on procedural arbitrability disputes.

(*Id.*, p. 6).

**{¶18}** This timely appeal followed.

## ANALYSIS

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN COMPELLING ARBITRATION OF [THE UNION'S] GRIEVANCE BECAUSE, PURSUANT TO THE [CBA], THE GRIEVANCE WAS NOT TIMELY SUBMITTED.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN FINDING THAT THE [CBA] LANGUAGE GRANTS JURISDICTION TO AN ARBITRATOR IN REGARDS TO AN UNTIMELY GRIEVANCE.**

**{¶19}** The City advances two assignments of error predicated upon the same legal argument. Insofar as both assignments of error turn on the issue of the arbitrability of the timeliness of the grievance, they are addressed together.

**{¶20}** The trial court's decision to grant or deny a motion to stay proceedings pending arbitration is generally reviewed for an abuse of discretion. *Eric Petroleum Corp. v. Ascent Resources-Utica, LLC*, 2022-Ohio-3619, 198 N.E.3d 505, ¶ 25 (7th Dist.),

reconsideration denied, 7th Dist. Columbiana No. 21 CO 0036, 2022-Ohio-4817. "A trial court's grant or denial of a stay based solely upon questions of law, however, is reviewed under a de novo standard." *Eric Petroleum* at ¶ 25.

**{¶21}** The Ohio Supreme Court has consistently held that, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20 quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "[T]he question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination, unless the parties clearly and unmistakably provide otherwise." *Academy of Med. of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 12, quoting *AT & T Technologies Inc.* at 649, 106 S.Ct. 1415.

**{¶22}** In Ohio, arbitration is favored and any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration. Nonetheless, courts cannot "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Taylor* at ¶ 20 quoting *Equal Emp. Opportunity Comm. v. Waffle House*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

**{¶23}** Therefore, when a trial court is deciding whether to grant a motion to compel arbitration, "the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause." *Taylor* at ¶ 20, citing *Waffle House* at 294. Where the subject matter of a dispute is arbitrable, procedural questions that flow from the dispute and bear on its final disposition are the dominion of the arbitrator. *RM Riggle Enterprises, Inc. v. Commerce Park Place Holdings, L.L.C.*, 2021-Ohio-4215, 180 N.E.3d 748, ¶ 40 (8th Dist.); *FOP Capital City Lodge No. 9 v. Reynoldsburg*, 10th Dist. Franklin Nos. 12AP-451 and 12AP-452, 2013-Ohio-1057, ¶ 26, citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964; *Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 3d Dist. Hancock No. 5-12-08, 2012-Ohio-5134, ¶ 24, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998).

{¶24} We recognized the foregoing distinction in *Shakoor v. VXI Glob. Sols.*, 2015-Ohio-2587, 35 N.E.3d 539 (7th Dist.). We quoted *Bachrach v. Cornwell Quality Tools Co.,* 9th Dist. Summit No. 27113, 2014-Ohio-5778, for the proposition that:

> Federal courts have distinguished between threshold or gateway questions and procedural or subsidiary questions. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). A threshold question is a "narrow circumstance where contracting parties would likely have expected a court to have decided the [ ] matter." *Id.* at 83. Thus, "[i]f the contract [between the parties] is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 134 S.Ct. 1198, 1206 (2014). Those presumptions include that the courts, not the arbitrators, decide: (1) whether the claims fall within the arbitration agreement, *Academy of Medicine of Cincinnati [v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657,] ¶ 11-14, and (2) whether the arbitration agreement is legally enforceable, see *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 19-20.
>
> On the other hand, it is presumed that the parties intended arbitrators, not courts, to decide disputes about procedural or "subsidiary questions." *BG Group, PLC* at 1207; *Reed Elsevier, Inc.* See, e.g., *Reed Elsevier, Inc. [ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 597–598 (6th Cir.2013)] at 597. "Subsidiary questions grow out of the dispute and bear on its final disposition, and they include, for example, issues related to waiver, delay, or whether a condition precedent to arbitrability has been fulfilled." (Internal quotations, citations, and alterations omitted.) *Reed Elsevier, Inc.* at 597.

*Id.* at ¶ 10-11.

{¶25} In *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 664, 687 N.E.2d 1352, 1354 (1998), the parties agreed their substantive disputes were matters clearly within the scope of the arbitration provision. However, the parties

disagreed on the interpretation of a provision in the parties' service agreement requiring a ninety-day arbitration demand. Recognizing the party opposing arbitration must overcome the presumption in favor of arbitration, the Ohio Supreme Court opined:

> COSE can cite no "explicit language" providing that disputes respecting Section 7.7(a)(i) are not subject to arbitration. COSE can point only to the language of the ninety-day demand provision, and claim that the language itself evidences an intent not to submit this dispute to arbitration. However, the major weakness in COSE's argument is that someone, either the court or the arbitrator, must determine when a "controversy arose" in order to effectuate the intent of the parties as to that section. The language employed in Section 7.7(a)(i) is not so clear on what demands are untimely so as to be self-executing. Moreover, Gates McDonald does not agree, and has never agreed, that its demands are untimely.
>
> In this case, the language of Section 7.7(a)(i) is itself in need of interpretation before it can be implemented, and that interpretation is in dispute. COSE's argument that a timely demand is a condition precedent to arbitration does not help it on this key point – that a legitimate dispute exists over whether the demand was timely. As the parties have empowered the arbitrator to hear "all disputes and controversies of every kind and nature," what the parties intended if the factual situation of this case arose must be determined by the arbitrator. In addition, COSE presented no evidence at all of negotiating history with respect to this decisive question. Although the ninety-day demand provision may indeed be a "condition precedent" to arbitration of the fee disputes, COSE has not demonstrated an intent to exclude the dispute surrounding Section 7.7(a)(i) from the reach of the arbitration clause, and so has not overcome the presumption in favor of arbitrability.

*Id.* at 1357-1358.

**{¶26}** The same is true here. The City, as the party opposing arbitration, must overcome the presumption in favor of arbitration. Both parties concede the substantive portion of the grievance is arbitrable. Of equal import, the record below evinces a dispute between the parties regarding the interpretation of a clause in Article 10, Section 3 of the CBA, that is, "[g]rievances must be initiated within fourteen (14) calendar days *following the occurrence or the discovery of the occurrence giving rise to the dispute.*" (Emphasis added.) The Union contends the City's violation is ongoing, and in the alternative, the denial of the State Employment Relations Board motion began the running of the fourteen-day deadline. The City asserts the event that precipitated the filing of the State Employment Relations Board motion to enforce on April 26, 2022 likewise began the running of the fourteen-day deadline. Simply stated, the trial court could not reach a conclusion regarding the timeliness of the grievance without engaging in an interpretation of Article 10, Section 3 of the CBA.

**{¶27}** For the foregoing reasons, we find the timeliness of the grievance is a procedural issue, which requires an interpretation of the CBA, and must be determined by the arbitrator. As a consequence, the City's assignments of error have no merit and the judgment entry of the trial court sustaining the complaint to compel arbitration is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 MA 0082

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**