[Cite as *Kar v. TN Dental Mgt., L.L.C.*, 2024-Ohio-6075.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

FARNAZ KAR, D.D.S.,

Plaintiff-Appellee,

v.

TN DENTAL MANAGEMENT, LLC ET AL,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0057**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CV 02495

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.
Remanded.

---

*Atty. Matthew G. Vansuch* and *Atty. Timothy M. Reardon*, Brouse McDowell, LPA, for
Plaintiff-Appellee

*Atty. Erin J. McLaughlin*, *Atty. Kathleen Jones Goldman* and *Atty. Christian C. Antkowiak*,
Buchanan Ingersoll & Rooney PC, for Defendants-Appellants

Dated: December 18, 2024

---

**WAITE, J.**

{¶1} This interlocutory appeal involves the denial of a motion to stay trial court proceedings and to compel arbitration in an employment-related dispute. Appellee, Dr. Farnaz Kar, D.D.S., is an orthodontist from Georgia. She was employed by Appellant Professional Dental Alliance of Georgia, LLC ("PDA Georgia"). She later acquired membership shares in the parent company of PDA Georgia, which is an Ohio company called Professional Dental Alliance, LLC ("PDA LLC"). When she resigned from PDA Georgia and joined with another dental association in the Atlanta area, PDA LLC and PDA Georgia attempted to prevent her from working due to employee restrictive covenants in her employment contract and in the operating agreement of PDA LLC. Appellee filed a complaint against PDA LLC and PDA Georgia to prevent enforcement of the restrictive clauses, and they responded by initiating arbitration due to an arbitration clause in PDA LLC's operating agreement. Appellee contended the dispute should remain in the trial court.

{¶2} Appellants challenge whether the trial court properly issued a temporary injunction against the arbitration proceedings, but the record reflects that the parties agreed to stay arbitration until the trial court made its ruling as to whether arbitration was appropriate, and the court then ruled that no issues were arbitrable. Appellants also challenge the trial court's decision as to arbitration, arguing that there were no contradictions in the contracts to prevent enforcement of the arbitration clauses, that the arbitrator should have been permitted to determine its own jurisdiction, and that the trial court should have allowed some matters to go to arbitration, at least.

Case No. 24 MA 0057

**{¶3}**  The law is clear that a trial court has jurisdiction to determine threshold matters such as arbitrability and the validity of an arbitration clause, unless the arbitration clause itself delegates those questions to the arbitrator.  The arbitration clauses in this case do not delegate that power to the arbitrator.  Appellants are correct that there is no contradiction between a venue clause, allowing suits to be brought in court in Ohio, and an arbitration clause that broadly requires all disputes to be sent to arbitration.  Nevertheless, this record reflects there was no agreement by the parties to arbitrate disputes regarding employment restrictive covenants, nor was there agreement on what those covenants actually require.  The trial court correctly retained jurisdiction over all matters in this case and was within its power to stay arbitration proceedings.  Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.  As this matter concerns an interlocutory appeal, the case is remanded for additional proceedings.

Facts and Procedural History

**{¶4}**  Appellee is a resident of Georgia and is a licensed orthodontist in that state.  She is the sole breadwinner for her family and has three minor children.  In July of 2016, Appellee became employed by TN Dental Management, LLC ("TN Dental") and entered into an "Orthodontist Employment Agreement" ("Employment Agreement") on July 25, 2016.  TN Dental is a Georgia limited liability company, with its principal office in McDonough, GA.  Appellee's employment was in various offices in the Atlanta area.  In December 2017, the Employment Agreement was assigned to PDA Georgia, a Georgia limited liability company having its principal office in Pittsburgh, PA.  PDA Georgia thus became Appellee's employer.

Case No. 24 MA 0057

{¶5} On or about July 20, 2018, Appellee purchased an ownership interest in PDA LLC, an Ohio limited liability company, with its principal office in Pittsburgh, PA. PDA Georgia is a subsidiary of PDA LLC. As part of this purchase, Appellee signed a Subscription Agreement, a Deferred Unit Grant Agreement, a Promissory Note, and a Joinder to PDA's Second Amended and Restated Operating Agreement.

{¶6} On August 13, 2023, Appellee ended her employment with PDA Georgia (formerly TN Dental of Georgia), pursuant to a 90-day notice of resignation delivered on May 15, 2023.

{¶7} On August 14, 2023, Appellee began employment with a new company, called Smile Doctors, in the Atlanta, Georgia area.

{¶8} It is at this point that litigation began between the parties involving the following seven documents:

{¶9} 1. The Orthodontist Employment Agreement ("Employment Agreement"), signed by Appellee on July 25, 2016 (in which PDA Georgia hired Appellee to be an orthodontist; does not contain an arbitration clause, but does contain employment restrictive covenants of 2 years and 7 miles);

{¶10} 2. The Subscription Agreement, signed by Appellee on July 20, 2018 (governing Appellee's purchase of membership units in PDA LLC; it does not contain an arbitration clause or employment restrictive covenants);

{¶11} 3. The Deferred Unit Grant Agreement ("Deferred Unit Agreement") signed by Appellee on July 20, 2018 (describing the number of shares of PDA LLC that Appellee purchased; it does not contain an arbitration clause but does contain employment restrictive covenants of 18 months and 15 miles);

Case No. 24 MA 0057

{¶12} 4. The Joinder to Second Amended and Restated Operating Agreement ("Joinder to Second Operating Agreement") signed by Appellee on July 20, 2018 (in which Appellee agreed to abide by the terms of the Second Amended and Restated Operating Agreement; it does not contain an arbitration clause or employment restrictive covenants);

{¶13} 5. The Second Amended and Restated Operating Agreement ("Second Operating Agreement") executed on May 4, 2016 and not signed by Appellee (this is the operating agreement for PDA LLC, including the rights and duties of members and managers; it contains an arbitration clause and employment restrictive covenants of 2 years and 15 miles from an office of PDA LLC; is not clear whether PDA LLC has an office anywhere in Georgia);

{¶14} 6. The Promissory Note signed by Appellee on July 20, 2018 (Appellee borrowed $700,000 from PDA LLC to pay for her membership shares; it does not contain an arbitration clause or employment restrictive covenants; there is also an amendment to this note that does not appear to be in dispute); and

{¶15} 7. The Third Amended and Restated Operating Agreement ("Third Operating Agreement"), executed on October 1, 2019, but not personally signed by Appellee (updating the Second Operating Agreement of PDA and its members; contains an arbitration clause and employment restrictive covenants of 2 years and 15 miles from Appellee's prior employment area).

{¶16} On October 24, 2023, Appellee filed a complaint in the Mahoning County Court of Common Pleas against PDA LLC and another entity. The complaint requested declaratory judgment and sought for the court to declare that the employment restrictions in the Employment Agreement, the Third Operating Agreement, and other related

contracts, were unreasonable and unenforceable. PDA LLC filed a motion to compel arbitration. Appellee voluntarily dismissed the complaint on December 18, 2023.

{¶17} Three days prior to her dismissal, on December 15, 2023, Appellants PDA LLC and PDA Georgia filed a Demand in Arbitration against Appellee. This was filed with the American Arbitration Association. The demand alleged that Appellee was employed by PDA Georgia and held an ownership stake in PDA LLC. It alleged that Appellee's ownership interest was governed by employee restrictive covenants. It alleged that Appellee resigned from PDA Georgia and took employment with a competitor, Smile Doctors, and that Smile Doctors is a direct competitor of PDA LLC and PDA Georgia within the territory governed by restrictive covenants, this territory covering 15 states. The arbitration demand asked for immediate injunctive relief to prevent Appellee from violating the restrictive covenants. It also set forth claims for breaches of the Employment Agreement, the Second and Third Operating Agreements, the Deferred Unit Grant Agreement, and the Promissory Note. Finally, it alleged a claim of unfair competition. The seven aforementioned documents were attached to the demand in arbitration and were referenced throughout.

{¶18} On December 22, 2023, Appellee filed a second complaint, this time against TN Dental, PDA Georgia, and PDA LLC. The complaint contained three counts: The first asked for declaratory judgment that the noncompetition and nonsolicitation employment restrictions in some of the contracts (including but not limited to the Employment Agreement and the Third Operating Agreement) were unreasonable and unenforceable. The second alleged that PDA LLC breached the Employment Agreement and Third Operating Agreement by attempting to enforce employment restrictions and by bringing

claims regarding these contracts to arbitration. The third requested an injunction to stop the arbitration proceedings during the pendency of this civil action.

{¶19} On December 27, 2023, Appellee filed a motion for immediate stay of arbitration and for a temporary restraining order.

{¶20} On January 30, 2024, Appellants filed a motion to stay court proceedings and to compel arbitration. These motions were referred to a magistrate.

{¶21} On February 7, 2024, the magistrate ordered that all proceedings filed in AAA Arbitration 01-22-0003-3088 were to be stayed. The magistrate determined: "The parties agree that, until the foregoing issues are properly disposed of by this Court, including any objections to the Magistrate's report and recommendations . . . all proceedings . . . are hereby stayed until further notice of this Court."

{¶22} The magistrate filed its full report and order on March 8, 2024. Both parties filed objections to the magistrate's report. The trial court ruled on these objections on May 16, 2024, and entered judgment on the threshold matters regarding which tribunal should determine arbitrability, and which issues, if any, should be submitted to arbitration. The court determined that there was no meeting of the minds regarding arbitration. Only two of the seven contracts under review had arbitration provisions, and the court found that while the Second and Third Operating Agreements contained arbitration clauses, they also contained venue clauses granting jurisdiction over any disputes to Ohio courts. The Employment Agreement had no arbitration clause, and granted jurisdiction and venue to courts in Henry County, Georgia. Hence, the court found that the arbitration and venue provisions were ambiguous and fundamentally incompatible, and determined that it was the proper forum to determine whether Appellee's claims were arbitrable, ultimately

holding that none of Appellee's claims were subject to arbitration. The court also continued the stay that had been issued by the magistrate on February 7, 2024.

{¶23} PDA LLC and PDA Georgia filed a notice of appeal on May 28, 2024.

{¶24} An order granting or denying a motion for stay of trial pending arbitration proceedings is immediately appealable. R.C. 2711.02(C). The judgment entry under review, although interlocutory, involves a final ruling on the court's denial of Appellants' motion to stay trial proceedings and compel arbitration.

{¶25} We have rearranged the assignments of error for the sake of clarity and logic.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING A PRELIMINARY INJUNCTION WITHOUT COMPLYING WITH THE PROCEDURAL REQUIREMENTS OF CIV.R. 65.

{¶26} Appellants argue that the trial court granted Appellee's third count in her complaint and issued a preliminary injunction against the arbitration proceedings. Appellants contend the court failed to comply with Civ.R. 65 by failing to hold a hearing on the request for an injunction. They argue that the trial court failed to review three of the four requirements in issuing the preliminary injunction. "In ruling on a motion for preliminary injunction, a trial court must consider whether (1) the moving party has shown a substantial likelihood that he or she will prevail on the merits of their underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) issuance of the injunction will not harm third parties; and (4) the public interest

would be served by issuing the preliminary injunction." *Ramun v. Ramun*, 2005-Ohio-6921, ¶ 21 (7th Dist.). Appellants conclude that the trial court should not have issued a preliminary injunction to stop the pending arbitration proceedings, and that arbitration should be allowed to continue regardless of the outcome of the other issues on appeal.

**{¶27}** Our review of the record reveals there was no preliminary injunction issued in this case. On February 7, 2024, the parties agreed to stay arbitration proceedings until the questions regarding arbitrability were resolved by the trial court. Those matters continue to be litigated in this appeal, and thus, have not yet been fully resolved. Because Appellants agreed to the stay, they have waived any allegations of error regarding the stay. "Under the 'invited error' doctrine, a party cannot take advantage of an error that the party induced the trial court to make." *Zapor Architects Group, Inc. v. Riley*, 2004-Ohio-3201, ¶ 41 (7th Dist.) (appellant waived the argument on appeal regarding appellee's right to assert arbitration because it argued the opposite position in the trial court).

**{¶28}** This record shows that Appellants agreed to a stay of their arbitration proceeding pending the trial court's decision on arbitrability. The trial court's judgment entry simply repeats the language in the magistrate's order that "all proceedings in arbitration are stayed pending further disposition of these issues upon review of the Trial Court should objections be filed herein." (5/16/24 J.E., p. 5.) Hence, the trial court merely continued the stay to which the parties agreed on February 7, 2024.

**{¶29}** Appellants believe that a permanent injunction was granted due to the way the trial court repeated the language from the magistrate's order. The decision to grant a permanent injunction is reviewed for abuse of discretion. *Collins v. Moran*, 2004-Ohio-

1381, ¶ 17 (7th Dist.). "An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable." *Lipp v. Lipp*, 2023-Ohio-4741 ¶ 9 (7th Dist.). A permanent injunction is an equitable remedy that will be granted only where there will be immediate and irreparable injury to the complaining party and there is no adequate remedy at law. *Lemley v. Stevenson*, 104 Ohio App.3d 126, 136 (6th Dist. 1995). In an action for a permanent injunction, the plaintiff must prove his or her case by clear and convincing evidence. *Collins* at ¶ 18.

**{¶30}** Appellants first contend the trial court abused its discretion by not holding a hearing. This is contradicted by the record, because a hearing was held on February 15, 2024, and that hearing transcript is part of the record. Appellants were fully aware of the scope of the hearing, because the scope was set forth in the magistrate's order of February 7, 2024. The hearing was to determine which forum should determine arbitrability, and which claims, if any, should be submitted to arbitration. If Appellants had any evidence to submit to the court regarding the stay of arbitration proceedings (a stay to which Appellants agreed) they should have done so at that time.

**{¶31}** Appellants' argument that the court failed to require a bond was waived. The bond requirement in Civ.R. 65(C) is for issuing a temporary or preliminary injunction. No bond is required to issue a permanent or final injunction. *West v. Selvey*, 77 Ohio App. 333, 336 (2nd Dist. 1945). Appellants neither requested, nor in any other way mentioned, the need for a bond when agreeing on February 7, 2024 that arbitration would be stayed. In addition, as Appellee points out, it was within the court's discretion to issue a nominal bond, or no bond at all. *Skiles v. Bellevue Hosp.*, 2006-Ohio-5361, ¶ 16 (6th Dist.); *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen.*

*Commodities Div.*, 109 Ohio App.3d 786, 793 (10th Dist. 1996). Appellants did not even raise this issue until an appeal had already been filed and the trial court lost jurisdiction to modify its May 16, 2024 final order.

**{¶32}** Nevertheless, we conclude that no preliminary injunction was issued. Count three of Appellee's complaint only asked for a stay of arbitration "during the pendency of this action." The parties filed competing motions to stay both proceedings, and then agreed to stay arbitration to allow the trial court to determine jurisdictional matters. The matter of a preliminary injunction was never litigated because it was unnecessary: the parties agreed to stay arbitration. The trial court determined that it had jurisdiction over the dispute regarding an employment restrictive covenant, which was one of the issues the parties agreed to submit to the trial court to decide. Appellants may not now take the position the trial court acted improperly by doing the very thing they agreed the court could do.

**{¶33}** For all of the above reasons, Appellants' fourth assignment of error is overruled.

## LAW GOVERNING ARBITRATION AGREEMENTS

**{¶34}** Before proceeding to the substantive arguments regarding arbitration itself, some basic principles apply to all of the remaining assignments of error.

**{¶35}** Ohio's public policy strongly favors arbitration. *Taylor v. Ernst & Young, L.L.P.*, 2011-Ohio-5262, ¶ 18. This is expressed in the Ohio Arbitration Act, R.C. Chapter 2711. *Id.* Under R.C. 2711.02(B), a court may stay an action pending arbitration upon application of any party when the court is "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration[.]" An arbitration

agreement is a matter of contract. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 11. There is a presumption in favor of arbitration when a claim falls within the scope of the arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.* at ¶ 16.

**{¶36}** Arbitration agreements are enforceable unless there are grounds at law or in equity for revocation. *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 19, citing R.C. 2711.01(A). "[T]o defeat a motion under R.C. 2711.02 for a stay of litigation a party must demonstrate that the arbitration provision itself, and not merely the contract in general, is unenforceable." *Norman v. Schumacher Homes of Circleville, Inc.*, 2013-Ohio-2687, ¶ 16 (4th Dist.), citing *Taylor Building Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 41.

**{¶37}** Generally, when an action involves both arbitrable and non-arbitrable claims, the court proceeding must be stayed, and the matters referable to arbitration must be resolved first. *Hussein v. Hafner & Shugarman Ents., Inc.*, 2008-Ohio-1791, ¶ 47 (6th Dist.); R.C. 2711.02.

**{¶38}** In order to be enforceable, a contract must be definite and certain. *Norman* at ¶ 18. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. There may be no meeting of the minds if contract provisions are contradictory and irreconcilable. *Workman v. Wileman*, 1976 WL 188868, *2 (9th Dist. August 4, 1976). There may not be a meeting of the minds if contract provisions are ambiguous, and the ambiguity cannot be resolved.

*Jones v. Reitman*, 2001 WL 283003, *3 (2d Dist. March 23, 2001). "The language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Beverly v. Parilla*, 2006-Ohio-1286, ¶ 24 (7th Dist.).

{¶39} "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). If a contract can be given a definite legal meaning, its terms are unambiguous, and courts must look solely to the contract language to determine the intentions of the parties. *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 12. Matters of contract interpretation are reviewed de novo on appeal. *Villas Di Tuscany Condominium Assn., Inc. v. Villas Di Tuscany*, 2014-Ohio-776, ¶ 9 (7th Dist.).

{¶40} "The federal policy favoring arbitration makes 'arbitration agreements as enforceable as other contracts, but not more so.' " *Brown v. JC Austintown, Inc.*, 2023-Ohio-553, ¶ 19 (7th Dist.), quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "[A] court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Morgan* at 418 (internal citation omitted). "While the law may encourage parties to settle their contractual disputes expeditiously through arbitration, it remains a basic principle that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Henderson v. Lawyers Title Ins. Corp.*, 2006-Ohio-906, ¶ 28, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN DETERMINING THAT IT IS THE PROPER FORUM FOR DETERMINING WHETHER APPELLEE'S CLAIMS ARE ARBITRABLE.

**{¶41}** Appellants argue that the arbitrator, instead of the court, should have been permitted to determine its own jurisdiction to arbitrate the matters raised in this case. However, it is settled law in Ohio that the "question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 12, citing *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1998). This principle has been accepted and reiterated by this Court as recently as March 13, 2024: "the question of arbitrability . . . is undeniably an issue for judicial determination." *Youngstown Professional Firefighters v. Youngstown*, 2024-Ohio-940, ¶ 21 (7th Dist.). The threshold question in this case is whether the parties agreed to any type of arbitration at all with respect to the Employment Agreement and the other documents under review in this case, and whether the two documents that contain arbitration clauses have clauses that can be enforced. These threshold questions must be first answered by the court. This was the conclusion correctly reached by the trial court.

**{¶42}** Appellants argue that when the arbitration provision of a contract delegates the question of arbitrability to the arbitrator, then a court should not decide this issue. Appellants contend that the Second and Third Amended Operating Agreements contain provisions incorporating AAA rules into the contracts. Appellants argue that current AAA

rules provide that the arbitrator will decide threshold matters, such as arbitrability itself; the arbitrator's jurisdiction; and the existence, scope, and validity of an arbitration clause.

**{¶43}** Parties can agree whether a court or an arbitrator will decide gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Westlake Services, LLC v. Chandler*, 2023-Ohio-3714, ¶ 26 (8th Dist.), citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). This type of agreement is commonly referred to as a "delegation clause," and requires " 'clear and unmistakable evidence' that the parties agreed to have an arbitrator decide the arbitrability question or questions at issue." *Id.* quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). "[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

**{¶44}** Appellants are asking this Court to read into the Second and Third Operating Agreements the entirety of the AAA rules, even rules that had not been written when the operating agreements were created and executed. This is quite a leap to make, and this is the same argument that was made and rejected in *Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 2021-Ohio-942 (8th Dist.), cited by Appellee. In *Little Aquanauts*, the appellant argued that the parties agreed to have the arbitrator determine arbitrability because the matter was referred to Judicial Arbitration and Mediation Services

(JAMS), and the JAMS's rules stated that these issues were to be determined by the arbitrator. The court held that this reference was insufficient, because "[a]ny agreement for arbitrability to be decided by the arbitrator rather than the court must be spelled out in the arbitration clause itself." *Id.* at ¶ 20.

**{¶45}** Since Appellants, who drafted the contracts in this case, did not include a delegation clause in any of the contracts expressly stating that the arbitrator determines arbitrability, there is no reason to read such a clause into the documents. Appellants admitted at the hearing on this matter on February 15, 2024, that they drafted the documents. (2/15/24 Tr., p. 46.) Ambiguity in written contracts is interpreted against the drafter. *Cadle v. D'Amico*, 2016-Ohio-4747, ¶ 24 (7th Dist.). Appellants apparently believe that the reference to AAA rules at least creates an ambiguity regarding who should determine arbitrability, even though there are no delegation clauses in any of the seven documents under review, and no arbitration clauses in five of the documents. However, if there was ambiguity in the lack of a delegation clause, it would be construed against Appellants, thus defeating Appellants' argument.

**{¶46}** For all of these reasons, Appellants' second assignment of error is without merit.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN DETERMINING THAT THERE IS NO BINDING AGREEMENT TO ARBITRATE.

**{¶47}** Appellants contend the trial court found conflict and ambiguity due to the presence of venue clauses in three of the documents under review. Appellants argue

that there is no question the Second and Third Operating Agreements contain broad arbitration clauses: "In the event of any dispute under this Agreement, such dispute shall be settled by arbitration in Mahoning County, Ohio, in accordance with the then prevailing rules of the American Arbitration Association for commercial disputes[.]" (Second Operating Agreement, Section 12.18). Appellants also agree with the trial court that Appellee is bound by those arbitration clauses by virtue of the Joinder Agreement, in which Appellee agreed to accept all the terms and conditions of the Second Operating Agreement. The trial court also held that Appellee is bound by the Third Operating Agreement, because she agreed to the methods contained in the Second Operating Agreement for amending and modifying the agreement.

**{¶48}** Appellants disagree, though, with the conclusion of the trial court that these documents contain a conflict based on venue. The trial court recognized the Second and Third Operating Agreements contained venue clauses that stated: "Any suit involving any dispute or matter arising under this Agreement may be brought in the courts of the State of Ohio, Mahoning County, or such other county where the Company may relocate its principal place of business." (Second Operating Agreement, Section 12.5.) The trial court then determined the documents that contained arbitration clauses had contradictory clauses, allowing disputes to be litigated in court rather than through arbitration. The trial court also found contradiction and resulting ambiguity in the venue provision of the Employment Agreement, which vested venue in the courts of Henry County, Georgia. The trial court alluded to other contradictions in the documents, but did not specify what these contradictions might be.

Case No. 24 MA 0057

**{¶49}** Appellants argue that the arbitration and venue clauses do not conflict. Appellants cite a case from the Ninth District Court of Appeals involving an employee/employer dispute. *Cook v. Community Health Partners*, 2015-Ohio-1075 (9th Dist.). The *Cook* case is similar to this appeal, in that the controversy was over terms of the employment contract between a doctor and the medical center that employed her. Dr. Cook alleged that an arbitration clause was ambiguous and unenforceable because there was a separate venue and forum selection clause. The arbitration clause in her contract was very broad: "any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration[.]" *Id.* at ¶ 8. The forum selection and venue clause was also very broad:

> Any action or claim arising from, under or pursuant to this Agreement shall be brought in the courts, state or federal, within the State of Ohio . . . The parties hereto hereby consent to venue in any state or federal court within the State of [sic] having jurisdiction over the County for all purposes in connection with any action or proceeding commenced between the parties hereto in connection with or arising from this Agreement.

*Id.* at ¶ 9.

**{¶50}** The *Cook* court held that there was neither ambiguity nor conflict between these provisions. The venue clause does not require controversies to be litigated in court. It merely provides that if a court action or claim is filed, it must be filed in a court in Ohio. *Cook* agreed that "it is the province of the Courts to initially determine arbitrability." *Id.* at ¶ 10. While an Ohio court should initially decide issues of arbitrability, this would not act

to completely negate arbitration over a controversy clearly required to be resolved by arbitration.

**{¶51}** *Cook* held that arbitration and court litigation are not mutually exclusive processes. *Id.* at ¶ 10. Arbitration and litigation work together. An arbitration clause may specifically exclude certain types of controversies, which would then be resolved in court. An arbitration award may need to be confirmed and converted to a judgment, which would happen in court. A party may move to vacate an arbitration award, which would also happen in court. As the two processes work together, the fact that both are referred to in a contract does not create ambiguity or evidence the absence of a meeting of the minds.

**{¶52}** *Cook* determined that three things were intended by the venue clause: 1) claims excepted from the arbitration clause must be litigated in a court in Ohio; 2) if the parties did not agree regarding arbitration, or if a party contended there were issues that fell outside the parameters of the arbitration clause, a claim must be brought in a court in Ohio; and 3) proceedings to enforce, vacate, or modify an arbitration award must be brought in a court in Ohio. *Id.* at ¶ 9. None of these conclusions conflict with the arbitration clause or render either clause ambiguous.

**{¶53}** The reasoning and holdings of *Cook* are found throughout Ohio caselaw, as well as in federal case law dealing with arbitration. "[W]hen a dispute falls within an arbitration provision, this provision must be addressed first. If the provision is enforced, the dispute proceeds to arbitration according to the provision. Only when the provision is found unenforceable do questions of forum selection and choice of law arise because, absent arbitration, a court must resolve the dispute." *Banks v. Jennings*, 2009-Ohio-5035, ¶ 10 (2d Dist.). "[A] forum selection clause cannot void an arbitration clause unless the

forum selection clause specifically precludes arbitration." *Reyna Capital Corp. v. McKinney Romeo Motors, Inc.*, 2011-Ohio-6806, ¶ 45 (2d Dist.). "[C]ourts generally have interpreted the contractual provisions to complement, rather than contradict, each other." *White v. ACell, Inc.*, 779 Fed.Appx. 359, 364 (6th Cir. 2019) (involving conflict between arbitration and litigation provisions of an employment contract).

{¶54} Appellants cite a multitude of other cases which restate the same principle: venue or forum selection clauses do not necessarily conflict with broad arbitration clauses. *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987); *Personal Sec. & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388, 395 (5th Cir. 2002) ("we must interpret the forum selection clause in the context of the entire contractual arrangement and we must give effect to all of the terms of that arrangement."); *Branch v. Mays*, 265 F.Supp.3d 801, 805 (E.D. Tenn. 2017) ("the weight of authority holds just the opposite—mandatory arbitration clauses and forum-selection clauses are not mutually exclusive, but rather are complementary.").

{¶55} Appellee cites *Bellman v. i3Carbon, LLC*, 563 Fed.Appx. 608 (10th Cir. 2014) in rebuttal. This case addressed an application to compel arbitration involving investment in securities. The investors signed a Subscription Agreement that was contained in a folder with over 200 documents. The Subscription Agreement did not contain an arbitration clause and specifically granted jurisdiction and venue over all disputes to the courts of Denver, Colorado, "and nowhere else." *Id.* at 610. The folder contained an Operating Agreement that contained a broad arbitration clause. The Subscription Agreement did not refer to the Operating Agreement. The court in *Bellman* held that the arbitration clause in the Operating Agreement could not be enforced

because of conflicting provisions between the Subscription Agreement and the Operating Agreement. *Id.* at 614. The court also gave other reasons for not enforcing the arbitration clause. For instance, the investors had not signed, benefitted from, or agreed to any provisions in the Operating Agreement, either implicitly or explicitly. The mere fact that the plaintiffs had invested money and had been given a folder with 200 documents did not show there was a meeting of the minds with respect to arbitration. The court also found no reason to elevate enforcement of an arbitration clause in unsigned documents over a venue and jurisdictional clause in a signed document.

**{¶56}** Although *Bellman* has many similarities to the instant appeal, it has some material differences. In our case, the Subscription Agreement required Appellee to adopt the Operating Agreement and all its terms. In addition, Appellee also signed the Deferred Unit Grant Agreement, which incorporated by reference the terms of the Second Operating Agreement. Appellee also signed a Joinder to Second Operating Agreement, in which Appellee specifically agreed to be bound by the Second Operating Agreement. Thus, the record is replete with documentation that Appellee knew about the Second Operating Agreement, which included a broad arbitration clause. The fact that the investors in *Bellman* were not bound in any way to the Operating Agreement was crucial to the court's ruling, whereas in our case, Appellee is clearly bound by the Second Operating Agreement, and by extension (at least arguably), to the Third Operating Agreement.

**{¶57}** The trial court in the instant case was very clear that Appellee was bound not only by the Second Operating Agreement, but also by the Third Operating Agreement. (5/16/24 J.E., p. 2.) "Although she did not expressly sign the agreement . . . she,

nonetheless, became subject to its terms since she expressly authorized the Membership Committee of [PDA LLC] to act on her behalf in amending the Second Amended and Restated Operating Agreement . . ." (5/16/24, p. 2.) These details make *Bellman* inapplicable, here.

**{¶58}** Appellee has not cited any caselaw that reasonably conflicts with those on which Appellants rely regarding the compatibility of venue clauses with arbitration clauses. This alleged contradiction was one of two reasons the trial court gave for finding unresolvable ambiguity among the seven contracts at issue in this case. The trial court was incorrect on this point, and should not have relied on it in its decision in this matter.

**{¶59}** However, the trial court had a second, valid, reason for its decision. The second reason that the trial court gave for finding there was no meeting of the minds in this matter is that there were multiple conflicting provisions in the seven contracts aside from the contrasting venue and arbitration clauses. The trial court found conflict existed because only two documents contained arbitration clauses. The trial court found conflict between the venue clause of the Employment Agreement (vesting venue in Georgia) and the remaining venue clauses, requiring that litigation take place in Ohio. The trial court alluded there were other conflicts, but did not list them in the final judgment.

**{¶60}** Appellants argue that the mere existence of multiple contracts with differing provisions does not negate a party's ability to enforce an arbitration clause found in one of the contracts. Appellants cite a single federal case from the Northern District of California for the principle that conflicting contracts between the same parties does not mean that an arbitration clause in one of those contracts cannot be enforced. *Rossi v. Purvis*, 2024 WL 319679, *6 (N.D.Cal. 2024).

**{¶61}** Appellee rebuts this argument by citing another federal case, this time from the Tenth Circuit Court of Appeals in Colorado. *Ragab v. Howard*, 841 F.3d 1134 (10th Cir. 2016). The parties in *Ragab* had entered into six different contracts, including an employment agreement. The agreements contained conflicting arbitration clauses. *Id.* at 1136. The conflicts involved: "(1) which rules will govern, (2) how the arbitrator will be selected, (3) the notice required to arbitrate, and (4) who would be entitled to attorneys' fees and on what showing." *Id.* The court held that there was no meeting of the minds regarding arbitration, because the various provisions could not be reconciled with one another. The plaintiffs' motion to compel arbitration was denied.

**{¶62}** In our case, there is no allegation that the two arbitration provisions conflict in any material way. There is no question the arbitration clauses are all-encompassing, covering any and all disputes. The alleged conflict arises between the two contracts that contain arbitration provisions (The Second and Third Operating Agreements) and one contract that does not (the Employment Agreement). Additionally, there are disputes about the Promissory Note and the Deferred Unit Agreement, which also do not contain arbitration clauses. Oddly, the Deferred Unit Agreement contains employment restrictions, but it provides different restrictions than the other contracts. A total of four of the contracts contain employment restrictive covenants governing how long Appellee must refrain from entering employment that competes with Appellants, the geographic distance in which she cannot compete, and the types of businesses that she must avoid becoming associated with. The provisions range between 18 months and 2 years, and between 7 and 15 miles. These are very serious differences and contradictions, lending further support to the conclusion reached by the trial court.

**{¶63}** The Employment Agreement requires the dispute over the employee restrictive covenants to be litigated in court. The Second and Third Operating Agreements require this dispute to be resolved in arbitration. There is no way to reconcile this dilemma over the fundamental difference in these provisions. Therefore, the trial court was ultimately correct in finding an irreconcilable issue exists involving arbitration, in which there was no meeting of the minds between the parties.

**{¶64}** Appellee also explains that the Third Operating Agreement limits the arbitrator's power "only to interpret and apply" the operating agreement. (Third Operating Agreement, Sec. 12.18). Since there may be conflicts, contradictions, and a need to determine the reasonableness of the employment restrictions, as well as the problem of determining what, if any, employment restriction was actually agreed to between the parties, this would appear to go beyond mere interpretation and application of the Third Operating Agreement. The arbitrator would also be forced to interpret and apply contracts with no arbitration provisions. Thus, the arbitration clause does not give the arbitrator power to do what needs to be done to resolve the dispute.

**{¶65}** Appellee also correctly contends that employee restrictive covenants are disfavored in law, and are reviewed in a manner that is very different from most contract provisions. *Ohio Urology, Inc. v. Poll*, 72 Ohio App.3d 446, 452 (10th Dist. 1991). Restrictive covenants are enforceable only to the extent necessary to protect an employer's legitimate business interests. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21 (1975), at paragraph one of the syllabus. The Employment Agreement in this case refers disputes about the restrictive covenants to the courts, not to arbitration: "If a court should hold that the Restricted Period and/or Restricted Area is unenforceable, then to the extent

permitted by law, the court may prescribe a duration for the Restricted Period and/or a radius or area for the Restricted Area that is reasonable, and the parties agree to accept such determination subject to their right to appeal." (Employment Agreement, Sec. 12.) The arbitration clause in the Third Operating Agreement does not appear to give the arbitrator the power necessary to modify the restrictive covenant in this way.

{¶66} Although not cited by the parties, a very recent United States Supreme Court opinion sheds light on why the discrepancy between the Employment Agreement and Third Operating Agreement should be resolved in court rather than in arbitration. *Coinbase, Inc. v. Suski*, 144 S.Ct. 1186 (2024) involved a dispute between two related contracts, one which contained an arbitration clause and one which did not. The first contract was a cryptocurrency Coinbase User Agreement to which users must agree when they created their accounts. This agreement contained an arbitration provision with a delegation clause. The delegation clause stated that an arbitrator must decide all disputes under the contract, including whether a given disagreement is arbitrable. The second contract involved the Official Rules for a promotional sweepstakes respondents entered. This contained a forum selection clause, providing that California courts "shall have sole jurisdiction of any controversies regarding the [sweepstakes] promotion."

{¶67} A class action suit was filed by the users regarding the sweepstakes. Coinbase moved to compel arbitration. The district court and the Ninth Circuit Court of Appeals held that the decision as to which contract controlled was left to the court, and that the Official Rules superseded the User Agreement. The question before the Supreme Court was which entity, a judge or an arbitrator, should decide which contract prevails when one contains an arbitration clause and a delegation clause.

**{¶68}** In an unanimous decision by the Supreme Court, *Coinbase* held: "Where parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Id.* at 1189. They rephrased their holding by saying: "Homing in on the conflict between the delegation clause in the first contract and the forum selection clause in the second, the question becomes whether the parties agreed to send the given dispute to arbitration. And that question must be answered by a court." *Id.* One of the reasons given by the court for this holding was that an arbitration or delegation clause could not be elevated over other forms of contract. *Id.* at 1194.

**{¶69}** In the instant appeal, there are no delegation clauses. Even if there were, pursuant to the *Coinbase* reasoning, the conflict between the contract requiring disputes be resolved by a court versus the contract sending disputes to arbitration must be litigated in court.

**{¶70}** The parties in the matter before us basically have the same type of dispute between two contracts (the Employment Agreement and the Third Operating Agreement, which is the current Operating Agreement), just as two contracts were in dispute in *Coinbase*. One of the contracts contains an arbitration clause, one submits the question to state court in Georgia (we note that litigation of this matter in Ohio instead of Georgia is apparently not an issue the parties dispute). Given the clear and conflicting contracts, only the court may decide which contract, and which contract provisions, prevail. Only then can the question of what issue, if any, may properly be submitted to arbitration. Submitting any portion of the case to arbitration at this point would create additional problems with the fundamental dispute over the employee restrictive covenants.

Therefore, this case is to remain under the jurisdiction of the Mahoning County Court of Common Pleas for the state court dispute to be resolved first.

{¶71} Although Appellants are partially correct that the trial court erred in deciding the contracts were in conflict due to the venue provisions, the trial court's second reason for the trial court's decision is correct. The case must remain under the jurisdiction of the court of common pleas and cannot be sent to arbitration unless and until the trial court fully decides if any issues are, in fact, arbitrable. Therefore, assignment of error number one is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED IN DETERMINING THAT NONE OF APPELLEE'S CLAIMS ARE SUBJECT TO ARBITRATION.

{¶72} The issue raised in this assignment of error has been substantially addressed in our review of Assignment of Error No. 1. Appellants contend that, even if the trial court retains jurisdiction over matters raised in the Employment Agreement, it may refer the disputes caused by virtue of the Second and Third Operating Agreements to arbitration. The problem with this approach is that it elevates the arbitration clause in one contract over every other provision in the other contracts, contracts that do not contain arbitration clauses. Appellee raised three claims in her complaint. The first was for declaratory judgment regarding the noncompetition and nonsolicitation clauses in the Employment Agreement and the Third Operating Agreement. The conflict between the absence of an arbitration clause in the Employment Agreement and the arbitration clause in the Third Operating Agreement requires that the court decide which contract has

priority over the same underlying issue. Until the trial court makes that determination, there is nothing to send to arbitration.

**{¶73}** The second count in the complaint alleges breach of these same two contracts over the issues raised in declaratory judgment. Any decision involving the Employment Agreement is purely a matter for state court. The conflicting provisions in the two contracts regarding the employment restriction clauses requires the court to decide which contract has priority, or whether there has been any meeting of the minds at all as to employment restrictions. No questions surrounding the employment restrictions have yet been resolved by the trial court. Once again, the trial court must first resolve this question before any matter can be submitted to arbitration, since the identical issues are in dispute in both forums.

**{¶74}** The third count seeks an injunction to stop the already filed arbitration from proceeding. Since that proceeding was stayed by agreement of the parties until the court resolves the underlying issues, arbitration as to those issues must continue to be stayed, as those issues have not been fully resolved. Although it is clear the employment restrictions may not be resolved in arbitration, it is not clear if there is any other pending dispute where arbitration may be appropriate. Until the court determines which contract and contract provisions have priority, what those provisions actually say, and if they can be enforced, there is nothing to send to arbitration.

**{¶75}** Although the arbitration proceeding may involve other issues than were raised in Appellee's complaint, the arbitration claim overlaps every issue raised by Appellee in its complaint and on appeal. The same seven contracts, including the Employment Agreement and Third Operating Agreement, are at issue in both

proceedings. Allowing the arbitrator to decide which issues do not overlap would essentially be allowing the arbitrator to perform the duty left only to the province of the court, and elevate arbitration over litigation.

**{¶76}** Appellants' third assignment of error is without merit and is overruled.

## Conclusion

**{¶77}** Appellants raise four arguments on appeal as to why the trial court erred in denying their motion to compel arbitration and in issuing a stay of the arbitration proceeding. Appellants contend the court improperly issued a preliminary injunction without following the rules of Civ.R. 65. The record reflects, however, that the parties agreed to stay the arbitration proceedings, and no preliminary injunction was actually issued. Appellants contend the trial court improperly determined a conflict existed between trial court venue clauses and broad arbitration clauses in certain of the seven contracts in dispute. Appellants are correct that the venue and arbitration clauses do not conflict, but this does not result in reversible error, here. There is a fundamental conflict between the absence of an arbitration clause in Appellee's Employment Agreement and the arbitration clauses found in the Second and Third Operating Agreements. These cover the same employment restrictions in dispute in both the court and arbitration. Appellee did not agree to arbitration in her Employment Agreement, or over its employment restrictions, and the existence of employment restrictions in other contracts cannot automatically force arbitration on this issue. Finally, since the fundamental dispute in the litigation filed to the court is the same dispute filed in arbitration, and the trial court has not yet determined which issues may properly be arbitrated, if any, there is not yet

an issue appropriate for arbitration in this matter. The trial court's judgment is affirmed, and the case is remanded for further proceedings.

Hanni, J. concurs.

Dickey, J. concurs.

[Cite as *Kar v. TN Dental Mgt., L.L.C.*, 2024-Ohio-6075.]

_____

For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Because this matter concerns an interlocutory appeal, the case is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**