# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

### FARNAZ KAR, D.D.S.,

Plaintiff-Appellee,

v.

### TN DENTAL MANAGEMENT, L.L.C. ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0055**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CV 2495

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Matthew G. Vansuch* and *Atty. Timothy M. Reardon*, Roetzel & Andress LPA, for Plaintiff-Appellee and

*Atty. Kathleen Jones Goldman*, *Atty. Erin J. McLaughlin* and *Atty. Christian C. Antkowiak*, Buchanan Ingersoll & Rooney PC, for Defendants-Appellants.

Dated:  December 19, 2025

**HANNI, J.**

{¶1}    This is the second appeal by Defendants-Appellants, Professional Dental Alliance of Georgia, LLC (PDA Georgia) and Professional Dental Alliance, LLC (PDA LLC) (collectively Appellants).  The first appeal was an interlocutory appeal and we issued a judgment affirming the trial court's judgment and remanding the case.  *Kar v. TN Dental Mgt., L.L.C.*, 2024-Ohio-6075, ¶ 77 (7th Dist.).

{¶2}    Appellants now appeal the May 7, 2025 order and judgment of the Mahoning County Common Pleas Court overruling their objections and adopting the magistrate's decision.  Relying mainly on our prior Opinion, the trial court ruled that none of the issues raised by Appellants and Appellee Farnaz Kar were subject to arbitration.

{¶3}    Appellants assert the trial court erred by ignoring their proposed stipulation to forego certain claims under the Employment Agreement (EA) and the Promissory Note (PN), two of the agreements that lacked arbitration provisions.  Appellants further contend the trial court erred by finding that the court and not the arbitrator was the proper forum to decide whether Appellee's claims were subject to arbitration.  They also maintain the trial court erred by determining none of the claims are subject to arbitration.

{¶4}    Appellants' assignments of error lack merit.  Appellee never agreed to Appellants' proposed stipulation and neither the magistrate nor the trial court ignored the proposed stipulation. The courts impliedly considered and rejected the proposed stipulation in their decisions.  In addition, the trial court properly determined that it was the proper forum to determine if claims were subject to arbitration and no meeting of the minds existed about arbitration due to conflicting and differing provisions among the seven contracts.

## I.    RELEVANT FACTS

{¶5}    Appellee Farnaz Kar, D.D.S. is a licensed orthodontist in Georgia who became employed by TN Dental Management, LLC in 2016 and entered into an Orthodontist Employment Agreement (EA).  In December 2017, Appellee's EA was assigned to PDA Georgia and thus PDA Georgia became Appellee's employer.

{¶6}   In July 2018, Appellee purchased an ownership interest in PDA LLC, of which PDA Georgia is a subsidiary.   Appellee signed the following agreements in conjunction with her purchase: a Subscription Agreement (SA) governing Appellee's purchase of membership units in PDA LLC; a Deferred Unit Grant Agreement (DUGA) which describes the number of shares in PDA LLC that Appellee purchased; a Promissory Note (PN) in which Appellee borrowed $700,000 from PDA LLC to pay for her membership shares; and a Joinder to PDA's Second Amended and Restated Operating Agreement (Joinder Agreement), which indicated Appellee's agreement to  abide by the terms of the Second Amended and Restated Operating Agreement, which included the rights and duties of members and managers (Second Operating Agreement).  A Third Amended and Restated Operating Agreement (Third Operating Agreement) was executed, but Appellee did not personally sign this Agreement.

{¶7}   On August 13, 2023, Appellee terminated her employment with PDA Georgia.  On August 14, 2023, she began employment with Smile Doctors in Georgia.

{¶8}   The following seven documents are involved in this case and each treats arbitration and restrictive employment covenants (employment covenants) differently:

1.    EA contains no arbitration clause and has employment covenants of 2 years and 7 miles of "all Future Locations in the Atlanta area";

2.    SA contains no arbitration or employment covenants;

3.    DUGA contains no arbitration clause and employment covenants of 18 months and 15 miles;

4.    PN contains no arbitration clause or employment covenants;

5.    Joinder Agreement contains no arbitration clause or employment covenants;

6.    Second Operating Agreement contains an arbitration clause and employment covenants of 2 years and 15 miles from PDA LLC; and,

7.  Third Operating Agreement contains an arbitration clause and employment covenants of 2 years and 15 miles from Appellee's prior employment area.

## II. PROCEDURAL HISTORY

## A. ARBITRATION AND TRIAL COURT PROCEEDINGS

**{¶9}** In 2023, Appellee filed a complaint against PDA LLC and non-party, Zahn Parent, LLC, regarding the employment covenants in the Second and Third Operating Agreements. *Kar v. Professional Dental Alliance, LLC*, Mahoning C.P. 2023 CV 2144. Appellant PDA LLC and Zahn filed a motion to compel arbitration or dismiss the complaint. Appellee voluntarily dismissed her case on December 18, 2023.

**{¶10}** On December 15, 2023, Appellants filed a Demand in Arbitration against Appellee with the American Arbitration Association (AAA). They alleged Appellee took employment with a competitor located within the territory governed by the employment covenants. Appellants attached all seven agreements and alleged breach of the EA, the DUGA, the PN, and the Second and Third Operating Agreements. They also alleged unfair competition and requested injunctive relief to prevent Appellee from violating the employment covenants.

**{¶11}** On December 22, 2023, Appellee filed a complaint in the Mahoning County Court of Common Pleas against TN Dental, PDA Georgia, and PDA LLC. She requested a declaratory judgment that the employment covenants in the EA were unenforceable. She alleged Appellants breached the EA and Third Operating Agreement by attempting to enforce unreasonable and unenforceable restraints against her ability to earn a living and treat her patients. She further alleged Appellants breached the EA and Third Operating Agreement by attempting to compel arbitration where the parties did not agree to do so. She requested an injunction from proceeding with arbitration and filed a motion to stay arbitration and a temporary restraining order.

**{¶12}** Appellants filed a motion to stay trial court proceedings and compel arbitration.

**{¶13}** The trial court referred the motion to a magistrate, who stayed all proceedings. The magistrate thereafter issued a decision and both parties objected. The

trial court overruled the objections and adopted the magistrate's decision. The court entered judgment, finding it was the proper forum to determine whether Appellee's claims were arbitrable, and none of Appellee's claims were subject to arbitration. The trial court concluded that no meeting of the minds occurred regarding arbitration because only two of the seven contracts contained arbitration provisions and the venue provisions in some of the same contracts granted jurisdiction over all disputes to the courts. The trial court found these provisions ambiguous and fundamentally incompatible. The court further found that numerous other provisions conflicted between contracts and this lead to the conclusion that no meeting of the minds existed as to arbitration. The trial court held that since the arbitration provisions were unenforceable, none of Appellee's claims were arbitrable.

## B.   PRIOR APPELLATE DECISION

{¶14} PDA Georgia and PDA LLC appealed to this Court and asserted four assignments of error. We overruled one of the assignments concerning procedure. *Kar,* 2024-Ohio-6075, ¶ 26-33 (7th Dist.). We then addressed Appellants' three remaining assignments of error concerning arbitration.

{¶15} We held it was settled law that the court, not the arbitrator, decides whether the parties agreed to arbitrate. *Id.* at ¶ 41. We found the trial court in this case properly determined that the threshold issue was whether the parties agreed to any type of arbitration and whether the two out of the seven contracts between them that contained arbitration clauses could be enforced. *Id*. at 41. We explained that while parties can agree to delegate authority to the arbitrator to determine whether the parties agreed to arbitrate, the agreement must contain a delegation clause that makes it "clear and unmistakable" the parties agreed to this. *Id*. at ¶ 43 (citations omitted).

{¶16} We found the Second and Third Operating Agreements lacked such delegation clauses, and even if clauses in them could be considered delegation clauses, they would be ambiguous at best, which required us to construe them against Appellants as the drafters of the agreements. *Id*. at ¶ 45. We concluded the absence of delegation clauses and the presence of arbitration clauses in only two of the seven agreements

negated a finding that the two agreements should be read to contain delegation clauses permitting the arbitrator to determine arbitrability. *Id*.

**{¶17}** Appellants asserted the trial court also erred by finding the Second and Third Operating Agreements contained unresolvable ambiguities based on contradictions in the arbitration and venue provisions included in them. *Kar*, 2024-Ohio-6075, ¶ 48 (7th Dist.). We agreed the trial court erred by finding the arbitrability and venue provisions incompatible. *Id.* at ¶ 57-58.

**{¶18}** However, we upheld the trial court's second reason for finding no meeting of the minds occurred. The trial court found that multiple other conflicting provisions existed in the seven contracts besides the arbitration and venue clauses, which showed no meeting of the minds on arbitration. *Id*. at ¶ 59. We determined that very serious differences existed in the agreements, with only two of the seven agreements containing arbitration clauses. *Id.* at ¶ 62. We further held that the DUGA contained employment covenants different from those in the Second and Third Operating Agreements on the length of the restriction, the types of businesses restricted, and the distances in which Appellee could not compete. *Id.*

**{¶19}** We further found the EA requires disputes over employment covenants to be litigated in court, while the Second and Third Operating Agreements required resolution in arbitration. *Id*. at ¶ 63. We likened the discrepancies to those in the United States Supreme Court case of *Coinbase, Inc. v. Suski*, 602 U.S. 143, 144 (2024), where the Court held, "'[w[here parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs.'" *Kar,* 2024-Ohio-6075, ¶ 68 (7th Dist.), quoting *Coinbase* at 1189.

**{¶20}** We found the parties in the instant case had a similar dispute because one of the contracts had an arbitration clause, while another required submission to state court. *Kar* at ¶ 70. We held that because the contracts conflicted, only the court could determine which contract prevails and which contract provisions prevail. *Id*. at ¶ 70. We instructed that:

The case must remain under the jurisdiction of the court of common pleas and cannot be sent to arbitration unless and until the trial court fully decides if any issues are, in fact, arbitrable.

*Id.* at ¶ 71.

**{¶21}** Finally, we addressed Appellants' third assignment of error asserting the trial court erred by determining none of Appellee's claims were subject to arbitration. *Id.* at ¶ 72. Appellants argued that even if the trial court retained jurisdiction over issues arising out of the EA, disputes arising out of the Second and Third Operating Agreements could still be referred to arbitration. *Id.*

**{¶22}** We rejected this assertion, noting that this approach "elevates the arbitration clause in one contract over every other provision in the other contracts, contracts that do not contain arbitration clauses." *Id.* at ¶ 72. We held that the three claims alleged by Appellee in her complaint stemmed from the EA and the Third Operating Agreement. *Id.* We noted the EA lacked an arbitration clause, while the Third Operating Agreement contained one. *Id.* We concluded this conflict required the trial court to determine which contract has priority over the same issue. *Id.* We held that "[u]ntil the trial court makes that determination, there is nothing to send to arbitration." *Id.* We found the arbitration claim and seven contracts were entangled with every issue Appellee raised in her complaint and allowing an arbitrator to decide the separation of those issues would usurp the court's province and allow arbitration to govern over litigation. *Id.* at ¶ 75.

**{¶23}** In affirming the trial court's judgment, we concluded:

since the fundamental dispute in the litigation filed to the court is the same dispute filed in arbitration, and the trial court has not yet determined which issues may properly be arbitrated, if any, there is not yet an issue appropriate for arbitration in this matter. The trial court's judgment is affirmed, and the case is remanded for further proceedings.

*Id.* at ¶ 77.

Case No. 25 MA 0055

## C. RECENT PROCEEDINGS

**{¶24}** Upon remand, the magistrate held a status hearing and ordered briefing to determine which issues were subject to arbitration, if any. The magistrate also indicated that Appellants may be submitting proposed stipulations to Appellee during that time.

**{¶25}** On April 7, 2025, the magistrate issued a decision finding that the trial court was the proper forum to fully resolve all issues. He explained this was the inevitable conclusion because this Court affirmed the trial court's prior finding that arbitration was unavailable because no meeting of the minds as to arbitration occurred between the parties. The magistrate further cited our rejection of Appellants' third assignment of error asserting trial court error in finding none of Appellee's claims subject to arbitration.

**{¶26}** Appellants filed objections to the magistrate's decision. On May 7, 2025, the trial court issued a judgment entry overruling Appellants' objections and adopting the magistrate's decision.

## III. CURRENT APPEAL

**{¶27}** Appellants filed a notice of appeal and assert three assignments of error. In their first assignment of error, Appellants contend:

> **The trial court erred in overlooking and, in turn, declining to adopt Appellants' proposed stipulation to withdraw and/or not pursue claims under or related to the Employment Agreement and Promissory Note in arbitration - which would have eliminated the need to engage in any further analysis.**

**{¶28}** Appellants contend the trial court ignored their proposed stipulation to withdraw from arbitration all issues under the EA and the PN. They assert this would alleviate the concerns we referenced in our decision relating to "conflicts, contradictions and a need to determine the reasonableness of the employment restrictions, which might appear to go beyond mere interpretation and application of the Third Operating Agreement." Appellants maintain this would also avoid contradictory outcomes because it would allow Appellee's claim under the EA and the PN to remain in court, while her claims under the Third Operating Agreement would proceed to arbitration.

{¶29} "A trial court is not required to accept an offered stipulation." *Gardner v. Das*, 2024-Ohio-2429, ¶ 19 (10th Dist.), citing *Rose v. Rose*, 1997 WL 142718 (10th Dist. Mar. 31, 1997). Further, a stipulation cannot be used against a party who has not agreed to it. *Desai v. CareSource Inc.*, 2024-Ohio-3028, ¶ 53 (2d Dist.). While a stipulation can bind the party making it, a stipulation is "like any other evidence," and is "admissible at the discretion of the court." *Gardner* at ¶ 19, quoting *State v. Jewell*, 1995 WL 34792, *4 (4th Dist. Jan. 24, 1995).

{¶30} We find no merit to Appellants' first assignment of error. A stipulation is "'a voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding.'" *Desai* at ¶ 52 (2d Dist.), quoting *Disciplinary Counsel v. Harmon*, 2019-Ohio-4171, ¶ 25, (quoting *Black's Law Dictionary* 1641 (10th Ed. 2014)). Appellee did not enter into an agreement as to withdrawal of the claims or agreements.

{¶31} Further, both the magistrate and the trial court considered the proposed stipulation. While the record contains no transcript of the February 20, 2025 status conference, Appellants indicated in their Motion to Determine Claims Subject to Arbitration and Supporting Brief that the proposed stipulation was discussed at the conference. Moreover, Appellants presented the proposed stipulation in their Motion to Determine Claims Subject to Arbitration and Supporting Brief. In his April 7, 2025 decision, the magistrate stated he considered Appellant's Motion and Supporting Brief and he considered counsels' arguments presented at the status conference.

{¶32} Appellants also discussed the proposed stipulation in their objections to the magistrate's decision and informed the trial court that the proposed stipulation was discussed at the status conference before the magistrate. In overruling Appellants' objections and adopting the magistrate's decision, the trial court indicated it considered Appellants' objections, which discussed the proposed stipulation withdrawing all issues arising under the EA and the PN.

{¶33} It is true that the magistrate and the trial court did not specifically identify the proposed stipulation in their decisions. However, they both indicated in their decisions that they considered the arguments, filings, and briefs which presented and discussed

the proposed stipulation. By rejecting Appellants' arguments and objections, the magistrate and trial court impliedly rejected the proposed stipulation.

{¶34} Accordingly, Appellants' first assignment of error lacks merit and is overruled.

{¶35} Appellants' second and third assignments of error assert the following:

**The trial court erred in failing to follow this Court's instruction upon remand to determine "which contract, and which contract provisions, prevail."**

**The trial court erred in determining that "no issues in this proceeding are subject to resolution through arbitration" and "resolution of all issues raised herein by the parties are to be resolved fully by the trial court."**

{¶36} In their second assignment of error, Appellants contend that all issues before this Court are resolved because of their proposed stipulation to limit their arbitration claims to only those in the Third Operating Agreement. They alternatively assert that even if the EA remains and conflicts with the Second and Third Operating Agreements, the agreement later in time controls the parties' obligations. Appellants cite caselaw and section 12.16 of their Third Operating Agreement, which provides that the Agreement "supersedes all prior agreements and understandings, whether oral or written, with respect thereto."

{¶37} In their third assignment of error, Appellants assert the trial court erred by determining no issues are subject to arbitration and the court would resolve all of the issues. Appellants contend all three claims of Appellee's complaint are "disputes under this Agreement," as provided for in section 12.18 of the Third Operating Agreement and are therefore subject to arbitration. Appellants conclude that because at least some of Appellee's claims are arbitrable, arbitration is required and the entire court case must be stayed under R.C. 2711.02(B) because it applies to both arbitrable and non-arbitrable claims.

{¶38} We find no merit to Appellants' second assignment of error. Appellants' proposed stipulation to abandon their claims under the EA and the PN in arbitration does

not eliminate the issues. We addressed Appellants' proposed stipulation claim in the first assignment of error in this Opinion and found that it lacked merit. The magistrate and the trial court considered Appellants' proposed stipulation and impliedly rejected it. Appellee rejected it as well. Further, Appellants do not mention any intention to abandon claims under the DUGA, which, similar to the EA, lacks an arbitration clause and includes employment covenants different than those in the Second and Third Operating Agreements.

{¶39} In addition, the proposed stipulation bypasses our prior Opinion holding that the trial court correctly retained jurisdiction over all matters in this case. *Kar*, 2024-Ohio-6075, ¶ 3 (7th Dist.). We also held the parties had no agreement about arbitration regarding the employment covenants because the EA lacked such a provision and the Second and Third Operating Agreements included one. *Id*. at ¶ 63, 77. We further held that the Third Operating Agreement did not give an arbitrator the power to modify the employment covenants, whereas a court possesses such power. *Id*. at ¶ 65-66.

{¶40} Appellants incorrectly state we provided a remand instruction to the court by holding that, "[g]iven the clear and conflicting contracts, only the court may decide which contract, and which contract provisions, prevail. Only then can the question of what issue, if any, may properly be submitted to arbitration." *Kar* at ¶ 70. We did not instruct the trial court to undertake a priority analysis concerning the contracts on remand. This language merely emphasized our holding that because numerous contracts contained conflicting provisions, the trial court and not the arbitrator was the proper forum to decide whether claims should be submitted to arbitration. This language did not appear in our Judgment Entry, which affirmed the trial court's judgment and stated only that, "[b]ecause this matter concerns an interlocutory appeal, the case is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion."

{¶41} Appellants' third assignment of error is also without merit. Appellee correctly asserts that the law-of-the-case doctrine applies here. "The law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Porter v. Litigation Mgt., Inc.*, 2001-Ohio-4298, ¶ 9 (8th Dist.).

Case No. 25 MA 0055

**{¶42}** In our prior Opinion, we held that:

(1) the trial court and not the arbitrator should determine if Appellee's claims were arbitrable;

(2) no binding agreement to arbitrate existed because the parties lacked a meeting of the minds on arbitration due to the conflicts in the Second and Third Operating Agreements containing arbitration clauses and the Employment Agreement, the PN, and the DUGA, lacking arbitration clauses; and

(3) the restrictive employment covenants must be resolved in court.

(*Kar*, 2024-Ohio-6075, ¶ 41, 57, 62-63, 74 (7th Dist.)). These holdings apply to the instant case.

**{¶43}** We held that "the trial court was ultimately correct in finding an irreconcilable issue exists involving arbitration, in which there was no meeting of the minds between the parties." *Id*. at ¶ 63. In its recent judgment entry, the trial court noted that "[i]nterestingly, the Appellate Court remanded these proceedings to the trial court to specifically determine what if any, issues in this case were appropriate for arbitration." (May 7, 2025 J.E., 2). The trial court relied on our overruling of Appellants' prior third assignment of error and concluded that because we affirmed its prior decision that arbitration was not the proper forum for resolution as no meeting of the minds existed as to arbitration, no issues were subject to arbitration. (May 7, 2025, J.E., 2).

**{¶44}** Again, our prior Opinion emphasized that the trial court was the proper forum to determine whether the employment covenants in the EA or the Third Operating Agreement prevail. We held that, "[n]o questions surrounding the employment restrictions have yet been resolved by the trial court. Once again, the trial court must first resolve this question before any matter can be submitted to arbitration, since the identical issues are in dispute in both forums." *Id.* at ¶ 73. We concluded that allowing any disputes to proceed in arbitration while others remained with the court would elevate arbitration over litigation when the law required these disputes to be determined by the court. *Id.*

Case No. 25 MA 0055

**{¶45}** The trial court considered the issue and held that none of the parties' issues were subject to arbitration. Our prior Opinion supports this determination since we held no meeting of the minds occurred about arbitration. We indicated that the trial court should determine "which issues may properly be arbitrated, if any." The trial court made its determination.

**{¶46}** For these reasons, Appellants' third assignment of error lacks merit and is overruled.

**{¶47}** In sum, Appellants' first assignment of error lacks merit because neither the magistrate nor the trial court overlooked their proposed stipulation. Appellants' second assignment of error lacks merit because the trial court impliedly rejected the proposed stipulation since Appellee did not agree to it and the court considered it when considering Appellants' objections to the magistrate's decision. Further, Appellants' third assignment of error lacks merit because the trial court correctly applied our prior Opinion determining that the court was the proper forum to determine whether issues were subject to arbitration and no meeting of the minds occurred regarding arbitration.

Waite, J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**